SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Richard Grabowsky v. Township of Montclair** (A-53-13) (073142)

**Argued December 3, 2014 -- Decided June 15, 2015**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether two municipal officials had disqualifying conflicts of interest when they voted on an application to amend a zoning ordinance.

The property at issue in this case is a single-parcel redevelopment area located at 63-65 Church Street in Montclair (the "Church Street Lot"). The Unitarian Universalist Congregation Church of Montclair (Unitarian Church), located at 67 Church Street, sits on a property adjacent to the western boundary of the Church Street Lot.

In March 2012, Fountain Square Development, LLC (Fountain Square) submitted a proposal for the development of an eighty-eight-unit assisted living facility on the Church Street Lot. The proposal required three amendments to the Township's redevelopment plan. Fountain Square presented its proposal to the Township of Montclair Council (Council), which consisted of Township Mayor Jerry Fried, Nick Lewis, and five other members. In April, while Fountain Square's proposed amendments to the redevelopment plan were pending before the Planning Board of the Township of Montclair, the Council introduced Ordinance 0-12-28 (Ordinance), which included the amendments. By letter to the Township Manager, the Planning Board endorsed two of the three amendments and advised the Township that it lacked sufficient information to address the third amendment.

On May 1, 2012, at a public Council meeting presided over by Fried, Fountain Square presented its proposal for an assisted living facility. Several residents stated concerns and objections to the proposal, and Lewis suggested an amendment to the Ordinance. Lewis's amendment was adopted by a vote of six to one, and Fried's subsequent motion to adopt the amended Ordinance passed, four to three. Fried, Lewis and two other Council members voted in support of the amended Ordinance, and the remaining three Council members opposed it.

Plaintiff Richard Grabowsky -- "a citizen of Montclair and an owner and developer of numerous commercial properties" in its downtown area -- filed a complaint in lieu of prerogative writs challenging the validity of the Ordinance. Plaintiff claimed, among other challenges, that Fried had a direct personal interest in the development that should have disqualified him from voting on the zoning issue, and that Fried and Lewis shared a disqualifying indirect personal interest because of their membership in the Unitarian Church. Plaintiff sought a preliminary injunction barring consideration or approval of development applications for the assisted living facility. Although no party filed a motion for any form of dispositive relief, the trial court sua sponte granted summary disposition, and dismissed plaintiff's complaint with prejudice. The trial court observed that Fried's remark (that his mother might reside in the proposed facility) did not give rise to an interest different from the interest of other members of the community, and that Fried's and Lewis's membership in the Unitarian Church did not warrant disqualification based on the facts of this case.

On plaintiff's appeal, an appellate panel concluded that the trial court's summary disposition was procedurally improper under Rule 4:67-1, but concurred with the court's determination that the two Township officials had no conflict of interest, and affirmed the trial court's dismissal of plaintiff's claims. The Court granted plaintiff's petition for certification. 217 N.J. 52 (2014).

**HELD**: Applying the statutory standards set forth in the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163 (MLUL), and the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25 (LGEL), as well as established common law authority, when a church or other organization owns property within 200 feet of a site that is the subject of a zoning application, public officials who currently serve in substantive leadership positions in the organization, or who will imminently assume such positions, are disqualified from voting on the application.

1

1. A court may grant summary disposition in only two settings, neither of which is presented by this case. First, Rule 4:67-1 governs all actions in which the court is permitted by rule or by statute to proceed in a summary manner, other than actions for the recovery of penalties which shall be brought pursuant to Rule 4:70. Second, Rule 4:67-1 applies in all other Superior Court actions other than matrimonial actions and actions in which unliquidated monetary damages are sought, provided it appears to the court, on motion made pursuant to Rule 1:6-3 and on notice, that it is likely that the matter may be completely disposed of in a summary manner. Summary disposition is permitted by agreement of the court and the parties, evinced by a clear and unambiguous statement from the judge and the unequivocal consent of the parties to a final resolution. Here, no party sought summary disposition, thus there was no notice to the parties to the action as Rule 4:67-1 requires. Because the conflict-of-interest claims were improvidently subjected to summary dismissal, they must be reinstated and considered on their merits. (pp. 15-18)

2. The challenge to the Ordinance presented in this appeal is based upon conflict-of-interest principles, and implicates the provisions of two statutes that codified common law principles: the MLUL and the LGEL. The MLUL governs Mayor Fried's participation in the zoning dispute if, as alleged, he reviewed the Ordinance as a member of the Planning Board. The MLUL provides that no member of a municipal planning board may "act on any matter in which he has, either directly or indirectly, any personal or financial interest." The LGEL is applicable to Fried and Lewis as members of the Council, and to Fried if he served on the Planning Board. The LGEL precludes government officials and employees from acting in any manner where "he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment." (pp. 18-23)

3. Against that backdrop, the Court turns to plaintiff's conflict-of-interest allegations. If proven, plaintiff's first contention -- that Fried's alleged comment disqualified him from voting on the Ordinance -- could constitute a "[d]irect personal interest" benefiting "a blood relative . . . in a non-financial way, but [in] a matter of great importance," as this Court set forth in Wyzykowski v. Rizas, 132 N.J. 509, 525 (1993). In order for a public official to be disqualified by an indirect personal interest in the zoning application, the interest must be distinct from that shared by members of the general public. New Jersey courts have rarely recognized a conflict of interest arising from a public employee's alleged direct personal interest or personal involvement in a matter when there is no prospect of financial advantage to the public official or his or her family or friends. On the limited record before the Court, Fried's alleged remark does not appear to give rise to such a conflict. If Fried's nexus to the proposed assisted living facility consists of nothing more than the possibility that the facility might someday house his mother, that "interest" or "involvement" is unlikely to warrant his disqualification. On remand, the trial court should either give the parties an opportunity to enter into a stipulation regarding the content and meaning of Fried's alleged public statement, or permit limited discovery as to Fried's statement. (pp. 23-28)

4. Plaintiff's second contention requires the Court to determine whether Fried's and Lewis's affiliations with the Unitarian Church gave rise to disqualifying indirect personal interests. Based solely on the fact that the Unitarian Church was neither an applicant nor an objector in the zoning dispute that gave rise to this appeal, the Appellate Division determined that neither Fried nor Lewis had a disqualifying interest in the dispute. This Court does not concur that this single factor resolves the question of whether the officials' involvement with the Unitarian Church gives rise to conflicts of interest. For purposes of determining whether a public official is disqualified from participating in a zoning application because of his or her affiliation with a church or other organization, that organization is deemed to have an interest in the application if it owns property within 200 feet of the property that is the subject of the application. In this case, the Unitarian Church held an interest in the application to amend the Ordinance by virtue of its status as the owner of property adjacent to the Church Street Lot. (pp. 28-31)

5. With that said, an organization's interest must be imputed to public officials affiliated with the organization in order for them to be disqualified from voting on an application. The Court declines to adopt a bright-line rule under which the interest of a church or other organization is automatically imputed to all of its members. This appeal, however, does not turn on the public officials' status as ordinary members of their church. Here, plaintiff alleges that Fried and Lewis had been selected to occupy positions of leadership in the Unitarian Church. If an organization has an interest in a zoning application, an official who holds, or who will imminently hold, a position of substantive leadership, has a disqualifying indirect personal interest and should refrain from deliberating and voting on the zoning application. On remand, the trial court should either afford to the parties the opportunity to enter into a stipulation regarding the Fried's and Lewis's leadership roles, or permit limited discovery on the issue. (pp. 31-34)

6. The longstanding conflict of interest rule reiterated in the Court's decision should not deter public officials from becoming involved in private organizations. In the rare circumstance in which public responsibilities and volunteer commitments conflict in a land use dispute, the public official should refrain from involvement in the matter. With careful attention to the potential for conflicts between public responsibilities and private affiliations, officials may effectively assist organizations and preserve public confidence in the integrity of local government. (pp. 34-35)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.**

RICHARD GRABOWSKY,

    Plaintiff-Appellant,

       v.

TOWNSHIP OF MONTCLAIR,
PLANNING BOARD OF THE
TOWNSHIP OF MONTCLAIR,
FOUNTAIN SQUARE DEVELOPMENT,
LLC, and MONTCLAIR KENSINGTON
URBAN RENEWAL, LLC,

    Defendants-Respondents.


        Argued December 3, 2014 – Decided June 15, 2015

        On certification to the Superior Court,
        Appellate Division.

        Jonathan T. Guldin argued the cause for
        appellant (Clark Guldin, attorneys).

        Thomas J. Trautner, Jr., argued the cause
        for respondents Montclair Kensington Urban
        Renewal, LLC and Fountain Square
        Development, LLC (Wolff & Samson,
        attorneys).

        Celia S. Bosco argued the cause for
        respondent Township of Montclair (Genova
        Burns, attorneys; Angelo J. Genova, of
        counsel).

        Arthur M. Neiss argued the cause for
        respondent Planning Board of the Township of
        Montclair (Beattie Padovano, attorneys).

    JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we review a trial court's summary dismissal of a complaint in lieu of prerogative writs and apply statutory and common law standards to determine whether two municipal officials had disqualifying conflicts of interest when they voted on an application to amend a zoning ordinance.

Plaintiff Richard Grabowsky filed a complaint in lieu of prerogative writs against the Township of Montclair. He challenged the validity of an ordinance adopted by the Township to permit the construction of an assisted living facility on a site located next to the Unitarian Universalist Congregation Church of Montclair (Unitarian Church). Plaintiff asserted that a statement made by Township Mayor Jerry Fried, a member of the Township Council and Planning Board, demonstrated that Fried had a direct personal interest in the development and that he should have been disqualified from voting on the zoning issue. He also alleged that Fried and a second member of the Council, Nick Lewis, shared a disqualifying indirect personal interest in the development project because of their membership in the Unitarian Church. The Township, its Planning Board and the developers seeking the opportunity to build the assisted living facility denied the existence of any conflict.

Plaintiff sought a preliminary injunction barring the Township and Planning Board from considering or approving development applications for the assisted living facility.

2

Although no party filed a motion for any form of dispositive relief, the trial court sua sponte granted summary disposition, and dismissed plaintiff's complaint with prejudice. An appellate panel concluded that the trial court's summary disposition was procedurally improper under Rule 4:67-1, but concurred with the court's determination that the two Township officials had no conflict of interest, and affirmed the trial court's dismissal of plaintiff's claims.

We agree with the Appellate Division that the trial court improperly granted summary disposition on an application for a preliminary injunction in which neither side sought dispositive relief. We do not concur with the panel's conclusion that, on the limited record developed in the trial court, plaintiff's claim was properly dismissed because the Unitarian Church was neither an applicant nor an objector in the redevelopment application at issue. Applying the statutory standards set forth in the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163 (MLUL), and the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25 (LGEL), as well as established common law authority, we hold that when a church or other organization owns property within 200 feet of a site that is the subject of a zoning application, public officials who currently serve in substantive leadership positions in the organization, or who will imminently

3

assume such positions, are disqualified from voting on the application.

We reverse the Appellate Division's judgment and remand this matter to the trial court for limited discovery on Fried's alleged statement and the leadership roles assumed by Fried and Lewis in the Unitarian Church, and for a determination on the merits.

## I.

The property at the center of this case is a 0.8 acre, single-parcel redevelopment area[1] located at 63-65 Church Street in Montclair. Formerly used as a parking lot, the parcel is known as the "Church Street Lot." The Unitarian Church, located at 67 Church Street, sits on a property adjacent to the western boundary of the Church Street Lot.

Plaintiff alleges in his complaint that Fried and Lewis were members of the Unitarian Church during the relevant period. According to documents submitted to the trial court by plaintiff, Fried and Lewis have not only been members of the Unitarian Church, but have served in positions of leadership in

---

[1] "'Redevelopment area' means an area which has been delineated a 'redevelopment area' or 'area in need of redevelopment' pursuant to the 'Local Redevelopment and Housing Law,' [N.J.S.A. 40A:12A-1 to -73] or an area in need of redevelopment delineated by a resolution of a State entity in accordance with the provisions of the enabling statute governing that State agency." N.J.S.A. 40A:12A-65.

4

its organization. Fried's website identified him as an active member of the Church who has "delivered lay sermons . . . has taught Religious Education, and has chaired several committees." Church records submitted by plaintiff indicate that Fried was elected as a Trustee at Large on May 20, 2012. It appears, but is not clear from the limited record, that Fried served as a trustee prior to that date. These records also reflect that Lewis was elected a member of the Board of Trustees on May 20, 2012, and that he chaired the Unitarian Church's Membership Committee in 2011 and 2012. Because no answer filed by any defendant is part of the record, it is unclear whether defendants admit or deny plaintiff's allegations concerning the respective roles of Fried and Lewis in the Unitarian Church.

On March 14, 2012, defendant-intervenor Fountain Square Development, LLC (Fountain Square) submitted a proposal for the development of an eighty-eight-unit assisted living facility on the Church Street Lot. Fountain Square's proposal required three amendments to the Township's redevelopment plan: first, the addition of the proposed facility as a permitted use on the Church Street Lot; second, an increase from five to six stories in the maximum height permitted for a building on the property; and third, a parking requirement of one-half space per residential unit in the facility. Six days later, Fountain Square presented its proposal to the Township of Montclair

Council (Council), which consisted of Fried, Lewis and five other members. Pursuant to N.J.S.A. 40A:12A-7, the Council referred the amendments to defendant Planning Board of the Township of Montclair for its consideration and recommendation.

On April 3, 2012, while Fountain Square's three proposed amendments to the redevelopment plan were pending before the Planning Board, the Council introduced Ordinance 0-12-28 (Ordinance), which included the amendments. Thereafter, the Planning Board met to consider the proposed Ordinance. By letter to the Township Manager, the Planning Board endorsed two of the three amendments to the Ordinance: the addition of an assisted living facility as a permitted use for the Church Street Lot and the parking space allocation. The Planning Board advised the Township Manager that it lacked sufficient information to address the third amendment regarding the maximum height allowed for a structure on the property. It specifically recommended that the Council ascertain "the impact of the increase in height on the adjoining church" and other properties surrounding the Church Street Lot. Plaintiff alleges that Fried, as a member of the Planning Board, voted in favor of the Board's recommendation to the Council.

According to plaintiff, at "one of the public hearings" Fried "made a comment . . . that an assisted living facility would benefit him because he could admit his mother to the

6

facility." The record does not reveal the timing of this alleged statement, and the parties disputed the nature and content of the statement at oral argument before the trial court.

On May 1, 2012, at a public Council meeting presided over by Fried, Fountain Square presented its proposal for an assisted living facility. Several residents stated concerns and objections to the proposal. Lewis suggested an amendment to the Ordinance limiting any assisted living facility to a height of five stories, rather than the six stories proposed by Fountain Square. A motion by another Council member to postpone adoption of the Ordinance was defeated by a margin of four to three. Lewis's amendment limiting the building height to five stories was adopted by a vote of six to one, and the Ordinance was revised in accordance with that amendment. Fried then moved to adopt the amended Ordinance, and his motion passed, four to three. Fried, Lewis and two other Council members voted in support of the amended Ordinance, and the remaining three Council members opposed it.

Following the passage of the Ordinance, defendant-intervenor Montclair Kensington Urban Renewal, LLC (Montclair Kensington), an affiliate of Fountain Square, purchased the Church Street Lot from its previous owner. On May 22, 2012, Montclair Kensington was formally designated as the redeveloper

7

of the Church Street Lot.  One month later, Montclair Kensington submitted to the Planning Board an application for site plan approval to construct the proposed assisted living facility.

## II.

This action commenced with the filing of a complaint in lieu of prerogative writs by plaintiff, described in the complaint as "a citizen of Montclair and an owner and developer of numerous commercial properties" in its downtown area. Plaintiff initially sued only the Township, but later amended his complaint to name the Planning Board as a defendant.

Plaintiff challenged the validity of the Ordinance on two grounds.  First, he claimed that the Ordinance was invalid because it was inconsistent with the Township's Master Plan for redevelopment, and the procedures followed by the Council in adopting the amendments to that plan had therefore violated N.J.S.A. 40A:12A-7 and N.J.S.A. 40:49-2.  Second, plaintiff claimed that Fried had a direct personal interest because of his alleged statement about his mother, and that Fried and Lewis had an indirect personal interest in the approval of the Ordinance due to their membership in the adjacent Unitarian Church.  He suggested that Fried and Lewis were motivated to vote for the Ordinance because assisted living residents could be added to the Unitarian Church's membership rolls, thus improving its financial condition.  He also claimed that Fried and Lewis hoped

8

to arrange free parking for church members in the assisted living lot.

Before the trial court, plaintiff sought a declaration that the Ordinance was invalid and void. He also asked the trial court to enjoin the Planning Board from considering or approving Montclair Kensington's application for preliminary and final site plan approval, and the Township and Planning Board from considering or approving any further applications by Montclair Kensington, or any other person or entity, for the redevelopment of the Church Street Lot.

After the parties agreed to delay any consideration or approval of the site plan application pending the trial court's decision on plaintiff's application for a preliminary injunction, the trial court entered an order to show cause with temporary restraints. No party moved for dismissal of the complaint, for summary judgment, or for summary disposition.

The trial court then held a hearing. It initially considered and granted the application of Montclair Kensington and Fountain Square for leave to intervene pursuant to Rule 4:33-1. The court then turned to plaintiff's application for a preliminary injunction. As plaintiff's counsel addressed the "reasonable probability of success on the merits" prong of the preliminary injunction standard set forth in Crowe v. De Gioia,

90 N.J. 126, 132-34 (1982), he referred to the showing necessary for summary judgment:

> [W]e have definitely shown a reasonable probability of success on merits. And I submit showing -- entitling us to summary judgment. And I believe, moving forward, regardless of the [c]ourt's ruling today, there's really minimal discovery, based upon the law that we've cited with respect to conflict of interest.

Plaintiff did not, however, seek any relief other than a preliminary injunction, or represent to the trial court that the entire case could be decided in a summary proceeding. Instead, he argued that because Fried and Lewis were not only members but also officials of the Unitarian Church, and Fried had publicly suggested that his mother might move into the proposed facility, the record supported a finding that both officials had a conflict of interest. Plaintiff argued that he had shown not only a reasonable likelihood of success on the merits, but had made a showing on all of the preliminary injunction factors set forth in Crowe, supra, 90 N.J. at 132-34. Defendants and intervenors argued that no such showing had been made and urged the trial court to reject a rule that public officials are disqualified from participation in a zoning board or planning board matter simply because they are members of a church that is located close to the disputed property.

10

The trial court ruled that "[c]ontrary to the assertions of all the parties here," the case could be resolved in a summary manner and that plaintiff's complaint should be dismissed.[2] The court rejected plaintiff's contention that the amendments contravened the Township's redevelopment plan and that the Township had violated N.J.S.A. 40A:12A-7 and N.J.S.A. 40:49-2. With respect to the alleged conflicts of interest, the trial court observed that Fried's alleged remark about his mother's potential residence in the assisted living facility did not give rise to any interest different from the interest of other members of the community. It held that the membership of Fried and Lewis in the Unitarian Church, "no matter how involved it may be," did not warrant disqualification. The trial court noted that while there may be circumstances in which a council member's involvement in a church with an interest in a zoning application compels disqualification, the facts of this case did not support such a remedy. It denied plaintiff's application for a preliminary injunction and entered an order dismissing plaintiff's complaint with prejudice.

Plaintiff appealed the trial court's judgment. An appellate panel concluded that the trial court had improperly

---

[2] The trial court did not cite Rule 4:67-1 in either its oral opinion or its subsequent memorandum decision, but its reference to "deal[ing] with [the case] in a summary manner" suggests that it dismissed plaintiff's complaint pursuant to that rule.

11

invoked the summary disposition procedure, noting that <u>Rule</u> 4:67-1 applies only when a party files a motion for summary disposition or when the parties consent to a determination under that rule.

The panel held, however, that the trial court's procedural error did not generate an unjust result. It agreed with the trial court that the Ordinance was not invalid as a deviation from the Township's Master Plan. The panel also concluded that the participation of Fried and Lewis in the Council's vote on the Ordinance did not give rise to a conflict of interest. The panel held that no disqualifying interest in the zoning application was raised by Fried's comment about his mother's possible residence in the assisted living facility. It viewed the fact that the Unitarian Church was neither an applicant nor an objector to be fatal to plaintiff's claim that the council members' church involvement raised a conflict of interest. The panel was unpersuaded by plaintiff's argument that Fried and Lewis had an indirect interest because the Unitarian Church might financially benefit from the opening of an assisted living facility next door. Accordingly, it affirmed the trial court's dismissal of plaintiff's complaint.

12

We granted plaintiff's petition for certification. 217 N.J. 52 (2014).[3]

### III.

Plaintiff challenges the appellate panel's conclusion that the trial court's summary disposition did not create an unjust result. He contends that the Appellate Division misread the record when it concluded that there were no factual disputes barring summary disposition. Plaintiff argues that he was entitled to discovery regarding the alleged conflicts of interest raised by the participation of Fried and Lewis in the Council's vote on the Ordinance. He contends that the Appellate Division improperly recognized a bright-line rule that a public official's affiliation with a church or other organization can never give rise to a conflict of interest with respect to zoning issues unless the organization is itself an applicant or objector. Plaintiff further asserts that Fried and Lewis had a "direct or indirect financial or personal involvement"

---

[3] In his petition, plaintiff raised two issues: whether the Appellate Division erred in finding the trial court's procedural error in summarily dismissing the case to be harmless; and whether the Appellate Division erred in applying the conflict of law principles of the MLUL and LGEL. Plaintiff did not challenge the Appellate Division's rejection of his claim that the Ordinance deviated from the Township's Master Plan and that the Township's procedures in adopting the Ordinance violated N.J.S.A. 40A:12A-7 and N.J.S.A. 40:49-2. Accordingly, those issues are not before the Court.

13

recognized as disqualifying by the LGEL, N.J.S.A. 40A:9-22.5(d), and that the Ordinance is therefore invalid.

The Township urges the Court to affirm the judgment of the Appellate Division. It contends that plaintiff conceded the absence of genuine factual disputes in his argument to the trial court and that the trial court properly resolved the case by summary disposition. The Township asserts that a public official's membership in a church or organization generates a conflict of interest only when the church or organization is an applicant or objector in a dispute over a proposed development. It dismisses as speculative plaintiff's allegation that Fried's comments concerning his mother revealed a disqualifying personal interest and that the Unitarian Church anticipated financial benefits from the proposed assisted living facility.

The Planning Board argues that Fried's involvement in its review of the Ordinance was immaterial because the Planning Board's role in the adoption of the Ordinance was only advisory to the Township. It contends that the Township's action, not that of the Planning Board, should be the focus of the Court's inquiry because the Township has the exclusive authority to enact a zoning ordinance.

Montclair Kensington and Fountain Square characterize plaintiff's claim as a rival real estate developer's tactic to delay and disrupt construction of an essential assisted living

14

facility. They argue that plaintiff invited the trial court to summarily decide the case and that the court properly dismissed plaintiff's claims. Montclair Kensington and Fountain Square assert that plaintiff's position contravenes case law holding that conflict-of-interest determinations are fact-specific, and that plaintiff seeks an impractical rule that would automatically disqualify public officials who are members of organizations from participating in many land-use applications. They argue that the prospect of the proposed assisted living facility enhancing the Unitarian Church's membership or finances was too speculative to support the disqualification of Fried and Lewis from the Township's review of the Ordinance.

IV.

A.

We concur with the Appellate Division that the trial court improperly dismissed this action pursuant to Rule 4:67-1.

Rule 4:67-1 is designed "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment while at the same time giving the defendant an opportunity to be heard at the time plaintiff makes his application on the question of whether or not summary disposition is appropriate." Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 4:67-1 (2015). In such summary actions, "findings of fact must be made, and a party is not

15

entitled to favorable inferences such as are afforded to the respondent on a summary judgment motion for purposes of defeating the motion." Ibid. (citing O'Connell v. New Jersey Mfrs. Ins. Co., 306 N.J. Super. 166, 172 (App. Div. 1997), appeal dismissed, 157 N.J. 537 (1998)).

A court may grant summary disposition in only two settings, neither of which is presented by this case. First, Rule 4:67-1 governs "all actions in which the court is permitted by rule or by statute to proceed in a summary manner, other than actions for the recovery of penalties which shall be brought pursuant to R. 4:70[.]" See, e.g., N.J.S.A. 47:1A-6 (actions instituted under the New Jersey Open Public Records Act); State Farm Indem. Co. v. Nat'l Liab. & Fire Ins. Co., 439 N.J. Super. 532, 538-39 (App. Div. 2015) (holding Legislature intended to permit summary action to compel arbitration under N.J.S.A. 39:6A-11). Second, in all other Superior Court actions "other than matrimonial actions and actions in which unliquidated monetary damages are sought," Rule 4:67-1 applies "provided it appears to the court, on motion made pursuant to R. 1:6-3 and on notice to the other parties to the action not in default, that it is likely that the matter may be completely disposed of in a summary manner." R. 4:67-1. Summary disposition is permitted by agreement of the court and the parties, evinced by "a clear and unambiguous statement from the judge and the unequivocal consent of the

16

parties to a final resolution . . . ." Waste Mgmt. of N.J., Inc. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 518-19 (App. Div. 2008).  Those procedural requirements serve important objectives:  to permit the presentation of a factual record and legal arguments to the court, and to ensure that the parties anticipate and address the standard for summary disposition before the court decides whether to grant that relief.

In this case, the trial court erred when it sua sponte dismissed the complaint with prejudice.  Because no party sought summary disposition, there was no "notice to the other parties to the action not in default," as the Rule requires.  R. 4:67-1. The only motions before the trial court were defendants' motions to intervene and plaintiff's motion for a preliminary injunction, governed by the Crowe standard.  Consequently, the parties had no opportunity to prepare a factual record to support or oppose summary disposition or argue the standard of Rule 4:67-1.  Indeed, the trial court acknowledged that its decision to summarily dismiss the case was contrary to the assertions of all parties.

Notwithstanding his counsel's reference to the factual record in the context of his argument on the "reasonable likelihood of success on the merits" prong of Crowe, supra, 90 N.J. at 132-34, plaintiff did not consent to the resolution under Rule 4:67-1.  The trial court's summary disposition in

17

defendants' favor denied plaintiff a fair opportunity to pursue his claims.

The Appellate Division acknowledged plaintiff's argument that he was entitled to further discovery and a hearing on the merits and agreed that summary disposition under Rule 4:67-1 was improper.  Rather than remedy the trial court's error, the panel granted the same procedurally improper relief on different grounds.  Because they were improvidently subjected to summary dismissal, plaintiff's conflict-of-interest claims must be reinstated and considered on their merits.

B.

As a general principle, a municipal ordinance is afforded a presumption of validity, and the action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action.  Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)); Toll Bros., Inc. v. Burlington Cnty. Bd. of Chosen Freeholders, 194 N.J. 223, 256 (2008).  The action of a planning board, affirmed by a governing body such as the Council in this case, is subject to judicial review.  N.J.S.A. 40:55D-17(h); Wyzykowski v. Rizas, 132 N.J. 509, 512-17, 522 (1993).

The challenge to the municipal ordinance here is based upon conflict-of-interest principles, which derive from one of the

18

guarantees afforded by the common law: "the entitlement to a fair and impartial tribunal." Wyzykowski, supra, 132 N.J. at 522. Under our common law, "[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body.'" Id. at 523 (alteration in original) (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J. Super. 566, 568 (App. Div. 1991)).

Plaintiff's challenge to the Ordinance on conflict-of-interest grounds implicates the provisions of two statutes that codified common law principles. The MLUL, which addresses, among other subjects, the composition and deliberations of planning boards, governs Fried's participation in the zoning dispute if, as alleged, he reviewed the Ordinance as a member of the Township Planning Board.[4] That statute provides that no member of a municipal planning board may "act on any matter in which he has, either directly or indirectly, any personal or financial interest." N.J.S.A. 40:55D-23(b).

---

[4] Although the record with respect to Fried's service on the Planning Board is limited to plaintiff's allegation, he may have served on that Board by virtue of his office as Mayor. The MLUL provides that the first of four classes of planning board members consists of "the mayor or the mayor's designee." N.J.S.A. 40:55D-23(a). "The term of the member composing Class I shall correspond to the mayor's . . . official tenure . . . ." N.J.S.A. 40:55D-23(b).

The second pertinent statute, the LGEL, is applicable to Fried and Lewis as members of the Council, and to Fried if he served on the Planning Board. See N.J.S.A. 40A:9-22.3(e)-(h), -22.5(d). In enacting the LGEL, the Legislature declared:

> a. Public office and employment are a public trust;
>
> b. The vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives;
>
> c. Whenever the public perceives a conflict between the private interests and the public duties of a government officer or employee, that confidence is imperiled;
>
> d. Governments have the duty both to provide their citizens with standards by which they may determine whether public duties are being faithfully performed, and to apprise their officers and employees of the behavior which is expected of them while conducting their public duties[.]
>
> [N.J.S.A. 40A:9-22.2.]

The LGEL's objective is to make ethical standards in state and local government "'clear, consistent, uniform in their application, and enforceable on a statewide basis.'" Wyzykowski, supra, 132 N.J. at 531 (emphasis omitted) (quoting N.J.S.A. 40A:9-22.2). Noting that "[w]henever the public perceives a conflict between the private interests and the public duties of a government officer or employee," the public's confidence in the integrity of government is "imperiled," the

20

Legislature recognized the need for standards by which it may be determined "whether public duties are being faithfully performed."  N.J.S.A. 40A:9-22.2(c)-(d).

To that end, the Legislature provided:

> No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment.
>
> [N.J.S.A. 40A:9-22.5(d).][5]

In Wyzykowski, supra, this Court identified four settings in which the case law mandates disqualification:

> (1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," where an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in

---

[5] The Legislature did not indicate whether the term "involvement" in the LGEL is intended to have a broader reach than the term "interest" used in the MLUL.  See ibid.; see also Cox & Koenig, New Jersey Zoning & Land Use Administration 88 (2015) (noting that "it is unclear whether the use of the word 'involvement' instead of 'interest' bears significance").  We need not reach the issue of whether there is a distinction between the terms used in the two statutes because the public officials' personal "interest" that plaintiff alleges would, if proven, also constitute their "personal involvement" in the matter. Accordingly, for purposes of this opinion, the term "personal interest" as used in the MLUL also denotes a "personal involvement" under the LGEL.

21

a non-financial way, but in a matter of great importance, as in the case of a councilman's mother being in the nursing home subject to the zoning issue; and (4) "Indirect [p]ersonal [i]nterest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.

[132 N.J. at 525 (quoting Michael A. Pane, "Conflict of Interest: Sometimes a Confusing Maze, Part II," New Jersey Municipalities, March 1980, at 8, 9).]

A court's determination "whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case." Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958) (citing Aldom v. Borough of Roseland, 42 N.J. Super. 495, 503 (App. Div. 1956)). To determine whether there is a disqualifying interest, a court need not ascertain whether a public official has acted dishonestly or has sought to further a personal or financial interest; the decisive factor is "whether there is a potential for conflict." Wyzykowski, supra, 132 N.J. at 524 (citing Griggs v. Borough of Princeton, 33 N.J. 207, 219 (1960)). If there is a disqualifying conflict, an inquiry into an official's motive is unnecessary; "[i]f there is 'interest,' there is disqualification automatically, entirely without regard to actual motive, as the purpose of the rule is prophylactic[.]"

22

McNamara v. Borough of Saddle River, 64 N.J. Super. 426, 429 (App. Div. 1960).

The ethics rules must be applied with caution, as "'[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official.'" Wyzykowski, supra, 132 N.J. at 523 (quoting Van Itallie, supra, 28 N.J. at 269). It is essential that municipal offices be filled by individuals who are thoroughly familiar with local communities and concerns. It is also imperative that local officials comply with the Legislature's direction and refrain from participating in a determination that raises a conflict. Thus, the nature of an official's interest must be carefully evaluated based on the circumstances of the specific case. Van Itallie, supra, 28 N.J. at 268.

C.

With those principles in mind, we consider the first of plaintiff's two conflict-of-interest allegations: that Fried's alleged comment about the prospect of admitting his mother to the planned assisted living facility disqualified him from voting on the Ordinance. If proven, the conflict alleged could fall within the third category recognized by the Court in Wyzykowski: a "[d]irect personal interest" benefiting "a blood relative . . . in a non-financial way, but [in] a matter of

23

great importance[.]" Wyzykowski, supra, 132 N.J. at 525; see also N.J.S.A. 40A:9-22.5(d) (LGEL conflict provision); N.J.S.A. 40:55D-23(b) (MLUL conflict provision).

In order for a public official to be disqualified by a direct personal interest in the zoning application, the interest must be distinct from that shared by members of the general public. See Wyzykowski, supra, 132 N.J. at 524 (citing Griggs, supra, 33 N.J. at 207, 220-21). Our courts have rarely recognized a conflict of interest arising from a public employee's alleged direct personal interest or personal involvement in a matter when there is no prospect of financial advantage to the public official or his or her family or friends. For example, in Van Itallie, supra, this Court dismissed as tenuous and speculative a conflict of interest claim asserted against a councilman who stated, "in the charged atmosphere of a public council meeting," that he shared with his colleagues "some purely selfish reasons" for voting in favor of a proposed zoning ordinance. 28 N.J. at 271-72. The Court held that the alleged source of the councilman's conflict -- a combination of personal and financial benefits that relatives of the councilman could have gained by virtue of the revised zoning -- were "entirely too remote to be considered as tending improperly to influence the councilman's official judgment." Id. at 269.

The Appellate Division found a disqualifying personal interest in Barrett v. Union Township Committee, 230 N.J. Super. 195, 204 (App. Div. 1989). There, a councilman cast the deciding vote in favor of an amendment to a zoning ordinance that authorized construction of a continuing care facility on a lot adjacent to, and owned by the operators of, the nursing home in which his mother lived. Id. at 196-97. Discovery revealed that the councilman was not responsible for the cost of his mother's care and that he therefore had no financial interest in the application. Id. at 199-200. Relying on the language of the predecessor statute to the MLUL, N.J.S.A. 40:55-1.4 (1974), repealed by L. 1975, c. 291, the panel noted that no financial stake was necessary in order for a conflict to arise if the public official had a personal interest in the matter:

> The statutory disqualification is markedly broadly couched, extending to personal as well as financial interest, "directly or indirectly." There is thus evidenced an intent that the bar is not confined to instances of possible material gain but that it extends to any situation in which the personal interest of a board member in the "matter" before it, direct or indirect, may have the capacity to exert an influence on his action in the matter.
>
> [Id. at 202 (emphasis omitted) (quoting Zell v. Borough of Roseland, 42 N.J. Super. 75, 81 (App. Div. 1956)).]

The panel concluded that "[i]t would strain credulity to conclude that [the councilman] did not have an interest in

25

seeing that his invalid mother was properly cared for in the facility that was owned and operated by [the owners of his mother's nursing home]." Id. at 204. Because of the councilman's present, tangible interest in the proposed facility that was important to his mother's medical care, the panel held that he should not have been involved in the matter, and invalidated the ordinance. Id. at 200, 204-05.

Similarly, a Law Division judge recognized a disqualifying personal interest arising from a councilman's longstanding opposition to the construction of a school. McNamara v. Borough of Saddle River, 60 N.J. Super. 367, 369-74 (Law Div.), aff'd, supra, 64 N.J. Super. at 431. Prior to taking office, the councilman had brought a legal action to enjoin the operation of the school, claiming that it reduced the value of his property and diminished his enjoyment of his home. Id. at 371-73. After taking office, the councilman voted in favor of the zoning ordinance amendment that would have barred the same school from expanding. Id. at 370-71. The court's decision was not premised on the councilman's alleged financial interest in limiting the growth of the school, but on his "adversary interest in the school at the time he voted for [the amended ordinance]," and on his "well developed and intense private concern" that "could have impaired his capacity to act in the interest of the citizens at large." Id. at 376, 378.

26

On the limited record before the Court, Fried's alleged remark that his mother might benefit from the proposed assisted living facility does not appear to give rise to a conflict of interest comparable to those identified in Barrett and McNamara. In contrast to the setting of Barrett, in which the official's mother was already a resident of the nursing home, there is no evidence that Fried's mother depended on the proposed developers of the assisted living facility for her medical care. The statement attributed to Fried -- a suggestion that his mother might enter the assisted living facility in the future -- does not distinguish him from any other member of the community who is responsible for an elderly family member and would welcome a local facility for that relative's care. If Fried's nexus to the proposed assisted living facility consists of nothing more than the possibility that the proposed facility might someday house his mother, that "interest" or "involvement" is unlikely to warrant his disqualification under the standards of the MLUL, the LGEL or the common law. Such an interest is likely to be found "entirely too remote" to influence the official's conduct. See Van Itallie, supra, 28 N.J. at 269.

The trial court, however, did not permit the development of a record regarding plaintiff's allegation that Fried's comment reveals a personal interest in the assisted living facility. Accordingly, on remand, the trial court should give the parties

27

an opportunity to enter into a stipulation regarding the content and meaning of Fried's alleged public statement. If the parties are unable to stipulate to the facts, the trial court should permit limited discovery as to Fried's statement about his mother's potential residence in the assisted living facility and the background to that statement. With a record on this issue, the court can then determine the merits of plaintiff's claim.

D.

We also review a second conflict-of-interest issue raised by plaintiff: whether Fried's and Lewis's affiliations with the Unitarian Church gave rise to disqualifying indirect personal interests. The Appellate Division's dismissal of plaintiff's claim was premised solely on the fact that the Unitarian Church was neither an applicant nor an objector in the zoning dispute that gave rise to this appeal. Accordingly, the panel determined that neither Fried nor Lewis had a disqualifying interest in the zoning dispute.

Guided by longstanding conflict of interest case law and statutory authority, we do not concur with the panel that this single factor resolves the question of whether the officials' involvement with the Unitarian Church gives rise to conflicts of interest. An organization that is an applicant or objector in a proceeding before a local board clearly has an interest in the outcome of that proceeding. See, e.g., Sugarman v. Twp. of

28

Teaneck, 272 N.J. Super. 162, 166, 171-72 (App. Div.), certif. denied, 137 N.J. 310 (1994); McVoy v. Bd. of Adjustment of Montclair Twp., 213 N.J. Super. 109, 111, 113-16 (App. Div. 1986); Marlboro Manor, Inc. v. Bd. of Comm'rs, 187 N.J. Super. 359, 360-62 (App. Div. 1982); Zell, supra, 42 N.J. Super. at 81-82. An organization's direct participation in a zoning application, however, is not the only measure of its interest in the issue. Whether or not an organization chooses to actively participate in a zoning application, it may have an interest in the application by virtue of its proximity to the property in dispute.

Recognizing that an application for the development of a given parcel can affect the owners of nearby properties, the Legislature included two notice provisions in the MLUL. See N.J.S.A. 40:55D-12, -62.1; see also Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 70 (1998) (noting purpose of notice provisions "that the public has a chance to be heard"). Accordingly, when a municipality proposes a classification or boundary change to a district, N.J.S.A. 40:55D-62.1 mandates notice, at least ten days prior to the hearing, to the owners of real property "within the district and within the State within 200 feet in all directions of the boundaries of the district" subject to the proposed classification change or the proposed new boundaries of the

29

involved district.  Similarly, N.J.S.A. 40:55D-12(b) requires "notice of a hearing requiring public notice pursuant to [N.J.S.A. 40:55D-12(a)]" to be "given to the owners of all real property as shown on the current tax duplicates, located in the State and within 200 feet in all directions of the property which is the subject of such hearing[.]"  The Legislature's notice requirement "is tantamount to a declaration of interest in the zoning treatment of a particular property on the part of those owning other property within 200 feet."  McNamara, supra, 64 N.J. Super. at 430.

The Legislature's choice to compel notice to property owners within a 200-foot radius provides an objective measure of a neighboring property owner's interest in a zoning dispute. That clear standard is unaffected by political, financial or strategic considerations that may prompt a church or other organization interested in a zoning application to refrain from active participation.  If an official with a direct or indirect interest in a property within the Legislature's 200-foot radius participates in a zoning decision, his or her participation may determine the outcome of the dispute, obviating the need for the property owner to formally take a position for or against the application.  We consider the 200-foot radius defined by the MLUL to provide a reliable measure of an organization's interest

in a zoning application, whether or not the organization is the applicant or chooses to appear as an objector or a supporter.

Consistent with the statutory notice provisions, for purposes of determining whether a public official is disqualified from participating in a zoning application because of his or her affiliation with a church or other organization, that organization is deemed to have an interest in the application if it owns property within 200 feet of the property that is the subject of the application.  In this case, by virtue of the Unitarian Church's status as the owner of property adjacent to the Church Street Lot, it clearly held an interest in the Fountain Square application to amend the Ordinance.

Our conclusion that the Unitarian Church held an interest in Fountain Square's zoning application, however, is only the first step in the inquiry.  In order for public officials affiliated with a church or other organization to be disqualified from voting on such an application, the organization's interest in that issue must be imputed to those officials.

When the organization is directly involved in a land use dispute as an applicant or objector, several courts have imputed the organization's interest to all of its members.  See McVoy, supra, 213 N.J. Super. at 111, 115-16 (holding that two planning board members who were members of church seeking variance were

31

disqualified due to conflict of interest despite plaintiff's consent to their participation); Marlboro Manor, supra, 187 N.J. Super. at 362-63 (holding that township councilmen who were members of church opposing transfer of liquor license were disqualified from voting on transfer application); Zell, supra, 42 N.J. Super. at 81-82 (holding that planning board member who was member of church seeking zoning change was disqualified from voting on church's application).[6]

Consistent with the fact-specific analysis used in conflict-of-interest questions, we decline to adopt a bright-line rule under which the interest of a church or other organization is automatically imputed to all of its members. Although the interests of a church or similar organization in a particular community will ordinarily be imputed to its members who are public officials, there may be circumstances in which automatic imputation of an organization's interests to its

---

[6] Such an imputed interest may not exist if the public official is not currently a member of the organization or the potential benefit to the organization is too attenuated. See Sugarman, supra, 272 N.J. Super. at 167-71 (holding that affiliate member of applicant congregation, who resigned from congregation to avoid conflict of interest, was not disqualified from participation as member of municipal board of adjustment in use-variance application); Landau v. Twp. of Teaneck, 231 N.J. Super. 586, 595-96 (Law Div. 1989) (declining to find conflict of interest where councilman and congregation member voted to approve sale of municipal lands to another congregation, despite contention that sale would alleviate overcrowding in councilman's congregation).

members may be unwarranted and unjust.  An individual's "membership" in an organization does not necessarily denote active involvement in the group or awareness of the positions it takes in a legal dispute.  The question of whether an organization's interest extends to all of its members should be determined on a case-by-case basis.

This appeal, however, does not turn on the public officials' status as ordinary members of their church.  Plaintiff alleges that when they voted on the Ordinance, Fried and Lewis had been selected to occupy positions of leadership in the Unitarian Church -- Fried as a past committee chair, Lewis as a current committee chair, and both about to begin terms as trustees.  By virtue of his or her responsibility for the organization's governance, an official who holds, or who will imminently hold, a position of substantive leadership in an organization reasonably is understood to share its interest in the outcome of a zoning dispute.  If the organization has an interest in a zoning application, such an official has a disqualifying indirect personal interest and should refrain from deliberating and voting on the zoning application.

On remand, the trial court should afford to the parties the opportunity to enter into a stipulation regarding the nature and timing of any leadership roles that were assumed, or were expected imminently to be assumed, by Fried and Lewis at the

33

relevant time.  If no such stipulation can be agreed upon, the parties should be permitted limited discovery regarding the responsibilities involved in any leadership roles assumed by Fried and Lewis in the Unitarian Church and the timing of their respective roles.[7]  On the basis of a fuller record, the trial court may then determine whether either official occupied or was about to occupy a leadership role that gave rise to a disqualifying conflict under the MLUL, N.J.S.A. 40:55D-23(b), the LGEL, N.J.S.A. 40A:9-22.5(d), or the common law.

## V.

The longstanding conflict of interest rule reiterated in this decision should not deter public officials from becoming involved in private organizations.  It applies only when a public official serves in a substantive leadership role in an organization that brings or opposes a zoning application, or that is the owner of property within 200 feet of the property in dispute.  The rule should not discourage public officials from working for religious institutions, community groups or other organizations, many of which cannot provide critical services to their communities without the time and talents of their

---

[7] In a case involving an alleged conflict of interest between an official's public duties and his or her commitment to an organization, a trial court should carefully limit discovery to the precise issue to be decided, to avoid fishing expeditions that may deter community volunteers from entering public service.

34

volunteers.  In the rare circumstance in which public responsibilities and volunteer commitments conflict in a land use dispute, there is a simple solution:  the public official should refrain from involvement in the matter.  With careful attention to the potential for conflicts between public responsibilities and private affiliations, officials may effectively assist organizations and preserve public confidence in the integrity of local government.

VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.

35

SUPREME COURT OF NEW JERSEY

NO.    ___A-53___                    SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

RICHARD GRABOWSKY,

        Plaintiff-Appellant,

            v.

TOWNSHIP OF MONTCLAIR,
PLANNING BOARD OF THE
TOWNSHIP OF MONTCLAIR,
FOUNTAIN SQUARE DEVELOPMENT,
LLC, and MONTCLAIR KENSINGTON
URBAN RENEWAL, LLC,

        Defendants-Respondents.

DECIDED          June 15, 2015
_____
            Chief Justice Rabner              PRESIDING
_____
OPINION BY     Justice Patterson
_____
CONCURRING/DISSENTING OPINIONS BY  _____

DISSENTING OPINION BY  _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |