**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1734-15T1

PARK CREST CLEANERS, LLC d/b/a
A PLUS CLEANERS AND ALTERATIONS,
SALVATORE TAMBURO and DANIELA
TAMBURO,

        Plaintiffs—Respondents,

v.

A PLUS CLEANERS AND
ALTERATIONS CORP, A PLUS
CLEANERS, LLC, LEE STEPHEN CHIN,
ELSA CHIN and SABRINA "ELSA"
CHIN,

        Defendants.

_____

CHERRY PLAZA, LLC,

        Appellant.

_____

        Submitted May 2, 2017 — Decided  October 17, 2017

        Before Judges Messano, Suter, and Grall.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Camden County,
        Docket No. C-0078-14.

        McDowell Posternock Apell & Detrick, PC,
        attorneys for appellant Cherry Plaza, LLC
        (Daniel Posternock and Diana R. Sever, on
        the briefs).

Genova Burns LLC, attorneys for respondents
Park Crest Cleaners, LLC, d/b/a A Plus
Cleaners and Alterations, Salvatore Tamburo
and Daniela Tamburo (James Bucci, of counsel
and on the brief; Nicholas J. Repici and
Michael C. McQueeny, on the brief).

PER CURIAM

This appeal is from a final judgment in an action on a contract to purchase an ongoing dry-cleaning business and its equipment for $500,000.[1]  Plaintiffs, Park Crest Cleaners, LLC and its owners Daniela and Salvatore Tamburo, purchased the business from defendants, A Plus Cleaners and Alterations Corp., LLC (A-Plus), Lee Stephen Chin (Chin), and his wife and daughter, Sabrina and Elsa Chin.  The non-party, Cherry Plaza, LLC (Cherry), owns the premises and leased it to defendants prior to the sale and to plaintiffs after the sale.  Although Cherry was not a party to the action on the contract of sale, the final judgment includes provisions that affect Cherry's rights under its lease with plaintiffs.

Cherry's cross-appeal and plaintiffs' opposition are before us.  Defendants' appeal was dismissed for failure to prosecute.

---

[1] The contract includes two agreements: an asset purchase agreement, which addresses the sale of the business and its equipment; and an agreement on a note held by the seller that secures a loan for half of the purchase price.

We reverse on Cherry's appeal and remand for amendment of the final judgment.

I.

A few months after purchasing the business, plaintiffs sued defendants on the contract. They alleged defendants fraudulently misrepresented and conspired to misrepresent the value of its sales,[2] breached the contract and covenant of good faith and fair dealing and were unjustly enriched. Plaintiffs sought monetary damages and rescission of the contract, and demanded a jury trial on "all issues so triable."

The jurors found that plaintiffs proved fraud, conspiracy to defraud, breach of the contract and the implied covenant and grounds to pierce the corporate veil. The jurors awarded plaintiffs $682,000 for compensatory and $301,000 for punitive damages.

Cherry was drawn into the dispute at the conclusion of the parties' post-trial, pre-judgment motions. The trial court

---

[2] In the contract, defendants warranted and represented that the "financial information of the Business for the past year provided by the Selling Parties to the Purchaser are true and correct in all material respects"; and "[n]o representation or warranty . . . made in any certificate or memorandum furnished or to be furnished by any of the Selling Parties, or on the Seller's behalf, contains, or will contain any willful and knowing untrue statement of material fact or omits [sic] to state any material fact necessary to make any statement herein not misleading."

denied defendants' motions for judgment notwithstanding the verdict and a new trial. On plaintiffs' motion for equitable relief on the contract of sale, the court rescinded, nullified and voided the contract and note and restored defendants as owners of the business and its equipment.

On its motion for equitable relief, plaintiffs also sought rescission or reformation of Cherry's lease. Although that relief implicated Cherry's as well as plaintiffs' and defendants' rights, plaintiffs did not join Cherry as a party or give Cherry notice of the motion.[3]

As to Cherry, plaintiffs asked the court to substitute defendants for plaintiffs as the tenants and guarantors or reinstate defendants' prior lease with Cherry. In their supporting brief, plaintiffs submitted that $344,176.45 of their compensatory damages award was for their future obligations to Cherry under the lease and supported a remittitur in that amount.

---

[3] There were two pre-trial motions on Cherry's participation. The first was filed by defendants, who sought to dismiss the complaint for failure to include an indispensable party, Cherry; plaintiffs opposed the dismissal and, in the alternative to dismissal, sought leave to amend to include Cherry. The second was filed by plaintiffs, who sought leave to amend to include Cherry; defendants opposed that motion. The court denied both motions on the ground that plaintiffs did not have an accrued claim for relief against Cherry at that point. But Cherry was not joined after the jurors found fraud.

A-1734-15T1

The pertinent circumstances and terms of Cherry's lease with plaintiffs are as follows. Plaintiffs signed the lease with Cherry four days prior to signing the business contract, which was done on June 14, 2014. The lease was to commence on "the earlier of the Business Sale date or July 30, 2014."

As to use of the premises, the lease permits use "as a clothing dry cleaner store with a full on-site dry cleaning plant, and no other use whatsoever without the express written consent of the Landlord." Commencement of the lease is linked to sale of the business: "If the Business Sale does not close by July 30, 2014 the Lease shall become void." But, the lease does not address termination for any reason related to the sale or the success of the business. To the contrary, it states: "The sole relationship between the parties [Cherry and the individual plaintiffs] created by the agreement is that of Landlord and Tenant. Nothing contained in the lease shall be deemed, held, or construed as creating a joint venture or partnership between the parties."

None of the defendants were tenants on the lease. But Chin and both Tamburos gave Cherry personal guarantees of payment and "compliance with and performance of all terms and covenants of the lease."

On plaintiffs' post-trial motion seeking revision of the lease, the court reserved decision pending notice and giving Cherry an opportunity to be heard. To that end, the court authorized plaintiffs to file an order to show cause (OTSC) "related to the issue of whether the commercial lease should be rescinded and/or reformed in light of the jury's finding that defendants committed fraud and/or conspiracy to commit fraud related to the above-referenced sales contracts, and each of the parties remaining rights and obligations . . . under the commercial lease stemming therefrom."[4] (initial capitalization omitted for ease of exposition).

The court signed the OTSC on October 2, 2015. It indicates that plaintiffs seek

> relief by way of summary proceeding at the return date set forth . . . pursuant to <u>Rule 4:67</u> and <u>as authorized by the [c]ourt, based upon the facts set forth in the verified complaint and the conclusions of law entered by the court following a trial and the issues addressed therein</u>, and for good cause shown. [(emphasis added)]

The complaint referenced was not informative, because it does not name or state a claim involving Cherry. And, the trial court's findings and conclusions were stated on the record and

---

[4] The order quoted was not entered until October 23, 2015, but plaintiffs indicate argument was heard on September 23, 2015.

the transcript was not provided to Cherry.  The OTSC required plaintiffs to serve Cherry with nothing other than the complaint and the brief and the certifications they submitted to secure the OTSC.

The OTSC compels Cherry to appear on the return date and show cause why the court should not preliminarily enjoin and restrain enforcement of the lease; rescind "and/or" reform the lease; discharge plaintiffs' obligations "and/or" liabilities under the lease; and grant other relief the court deems equitable and just.

Cherry's attorney submitted a written response addressing preliminary restraints in light of Crowe v. De Gioia, 90 N.J. 126 (1982).  When the hearing on the return date commenced, the court asked plaintiffs' attorney to address irreparable harm pertinent to preliminary relief.  Id. at 134.  In response to that question, plaintiffs' counsel explained that plaintiffs were "really seeking . . . to go straightforward to final relief" and moot the question of irreparable harm.  On that response, the court identified the issue as a declaration of rights under the lease that would include the right to have the lease rescinded or reformed.

Cherry's attorney objected to the court considering the merits that day and referred to a certification from the manager

of Cherry's shopping center, which included the drycleaners. According to the manager, he had information and believed that plaintiffs violated the lease by using chemicals prohibited by environmental laws and failing to provide proof of insurance and permit annual inspections. The attorney also pointed to the unfairness of leaving Cherry to collect rent from tenants and guarantors who were subject to a sizeable judgment for damages. The court assured the attorney those matters could be raised by motion for reconsideration.

Unpersuaded, the court included provisions in the final judgment that affected Cherry's rights under the lease, as well as the rights of the parties to the contract of sale litigated between them in the contract action. As a remedy for defendants' fraud, the court removed the Tamburos as tenants and guarantors, and rescinded the obligations and liabilities "that may exist or arise" on or after the date the court voided and nullified the contract of sale.[5] Under the lease as revised by the court, Chin retained his status as a guarantor and Sabrina and Elsa Chin were substituted as additional guarantors in lieu of the Tamburos. The court further reformed the lease to add all three Chins as tenants. In recognition of the shift of

_____

[5] The rescission of obligations that existed can be understood as absolving them of unsatisfied obligations prior to that date.

responsibility and obligations under the lease, the court remitted the compensatory damages awarded by $346,223.55.

In short, plaintiffs were given a remedy that absolved them of any responsibility to Cherry in lieu of the damages the jury awarded in a proceeding that did not include Cherry.

## II.

Plaintiffs urge us to dismiss Cherry's appeal for non-compliance with the rules of appellate procedure. Their arguments do not require extensive discussion.

There is no basis for dismissal of Cherry's appeal as untimely filed. The final judgment was entered on November 9, 2015, and defendants filed a timely appeal on December 24, 2015, as required by Rule 2:4-1. Cherry filed its cross-appeal on January 5, 2016, within the fifteen days of the filing of the notice of appeal, as permitted by Rule 2:4-2(a), and pursuant to that Rule, a respondent "may appeal against a non-appealing party" by serving and filing a notice of appeal and case information statement within the time fixed for cross appeals. This court has no basis for dismissing the appeal for untimely filing of the notice pursuant to Rule 2:4-1, because it was timely filed pursuant to Rule 2:4-2(a). See, e.g., Semexant v. MIL Ltd., 252 N.J. Super. 318 (App. Div. 1991) (dismissing a cross-appeal filed in similar circumstances because it was not

filed within the time permitted by Rule 2:4-2(a)).  In our view, the fact that the parties did not identify Cherry as a respondent or Cherry labelled its appeal as a cross-appeal is of no moment.

Plaintiffs also contend we should dismiss the appeal because Cherry did not file transcripts of all proceedings conducted in the trial court on the contract action.  Setting aside plaintiffs' decision to forego a motion to compel and hold this objection for its brief on the merits, Cherry has provided the transcript needed to resolve this appeal, which is the only proceeding conducted on notice to Cherry.[6]

For those reasons, we decline to dismiss the appeal for non-compliance with the Rules.

### III.

Turning to the merits, Cherry contends the court erred in reforming the lease to remove the Tamburos as tenants and guarantors, and rescind, void and nullify plaintiffs' obligations and liabilities under the lease.  Cherry claims reversible error on several grounds.  We conclude reversal is

---

[6] Although we do not have a record that allows us to confirm the validity of plaintiffs' segregation of damages representing their future obligations on the lease, the trial court accepted plaintiffs' account, plaintiffs are bound by it and it is not disputed.

required because Rule 4:67, properly applied, did not permit a grant of the relief plaintiffs sought in a summary proceeding conducted on the return date of this OTSC.

As the Supreme Court recently explained:

> Rule 4:67-1 is designed "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment while at the same time giving the defendant an opportunity to be heard at the time plaintiff makes his application on the question of whether or not summary disposition is appropriate." Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 4:67-1 (2015).
>
> [Grabowsky v. Township of Montclair, 221 N.J. 536, 549-51 (2015).]

Summary disposition is authorized in only two situations. Grabowsky, supra, 221 N.J. at 549-50; R. 4:67-1(a)-(b). This situation, an ex parte OTSC filed against a non-party that was not accompanied by a complaint, is not covered by Rule 4:67-1(b). See also R. 4:67-3, -4(b), 4(b), -5 (all contemplating summary proceedings involving parties). And, there is no court rule or statute expressly authorizing summary disposition of a claim for reformations or rescission of a contract on a lease. R. 4:67-1(a).

There were other problems. This was not a matter "likely" to "be completely disposed of in a summary manner." R. 4:676-

11

1(b). If the complexity of this matter precluding summary resolution was not clear earlier, it certainly was clear when Cherry's counsel raised the question of violations of the lease that had not been addressed at trial. R. 4:67-1(b). The court's summary dismissal of those concerns as matters that could be addressed on a motion for reconsideration suggest its recognition of the fact the matter could not be "completely disposed of" in a summary proceeding.

Moreover, "[s]ummary disposition is permitted by agreement of the court and the parties, evinced by 'a clear and unambiguous statement from the judge and the unequivocal consent of the parties to a final resolution . . . .'" Grabowsky, supra, 221 N.J. at 550 (quoting Waste Mgmt. of N.J., Inc. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 518-19 (App. Div. 2008)); see R. 4:67-5. Here, Cherry's counsel objected at the outset of the proceeding and with the affidavit of Cherry's manager indicating violations of the lease, it was not "palpably" shown that there was "no genuine issue of material fact." R. 4:67-5. Certainly, the potential for plaintiffs acquiring a shield from liability for lease-violations existing on the return date was a factual matter pertinent to the equity of reforming the lease and rescinding plaintiffs' obligations.

Simply put, the trial "court's summary disposition" in plaintiffs' favor denied non-party Cherry a fair opportunity to be heard on and defend against the relief requested. See Grabowsky, supra, 221 N.J. at 551 (reversing because the trial court's sua sponte summary disposition contrary to Rule 4:67 in defendant's favor deprived plaintiff of a fair opportunity to present his claims). Accordingly, we reverse and remand with direction to amend the final judgment by reinstating the damages and plaintiffs' lease and vacating provisions of the judgment reforming that lease.

There are several issues we have not addressed and are not remanding for reconsideration. Because plaintiffs have not filed a complaint against Cherry, or against defendants, pleading a claim for revision of the Cherry's lease, there is no pending matter to remand. We have not addressed the availability of reformation or rescission of the lease, because it was not necessary to resolve this appeal. We have not addressed Cherry's argument based on the entire controversy doctrine, because Cherry did not raise that issue in the trial court and it does not implicate the public interest or, at this point, the jurisdiction to adjudicate any matter in the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). In the event Cherry, plaintiffs or defendants elect to

proceed with an action addressing the lease in light of the fact that plaintiffs' no longer own the drycleaner business, <u>see, e.g.</u>, <u>Restatement (Second) of Contracts</u> §§ 153, 164(2), 265, 266 (1981), Cherry may raise the entire controversy doctrine at that time.

Reversed and remanded for amendment of the judgment in conformity with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1734-15T1