**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4470-15T1

CAROL MATULA,

     Plaintiff-Appellant,

v.

TOWNSHIP OF BERKELEY HEIGHTS,
TOWNSHIP OF BERKELEY HEIGHTS
PLANNING BOARD, and CHURCH OF
THE LITTLE FLOWER,

     Defendants-Respondents.

_____

        Submitted October 10, 2017 – Decided  September 11, 2018

        Before Judges Sabatino and Ostrer.

        On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-1299-13.

        Carol Matula, appellant pro se.

        McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondent Township of Berkeley Heights (Joseph V. Sordillo, on the brief).

PER CURIAM

This case returns to us after remand. See Matula v. Twp. of Berkeley Heights, No. A-5705-12 (App. Div. Aug. 21, 2015) (Matula I). We presume the reader's familiarity with our prior decision. In summary, plaintiff had filed a complaint in lieu of prerogative writs seeking, in part, to void three municipal resolutions adopted by the Township of Berkeley Heights. The first resolution authorized the evaluation of two lots, one owned by the Township and the other by the Church of Little Flower (Little Flower) in anticipation of a proposed "land swap" between the two entities. The other two resolutions awarded contracts for professional services relating to the proposed land swap. Plaintiff claimed several members of the Township Council, as well as the Township's Planning Board, had conflicts of interest arising out of their membership in Little Flower. The trial court dismissed the complaint on a pre-answer motion. We reversed the dismissal regarding the challenge to the three resolutions, and we remanded so the parties could develop an adequate record, and the trial court could, based thereon, determine if Little Flower had an interest that could be imputed to those of its members who voted on the resolutions. Matula I, slip op. at 15-16.

On remand, the trial court held that Little Flower had a direct interest only in Resolution 61-2013, which authorized the award of an architectural services contract to evaluate the church's lot "as a result of a potential land swap with

Little Flower Church." However, the court found that none of the voting members of the Council had a disabling conflict of interest, despite their association with the church. Plaintiff now appeals from the summary judgment dismissal of its claims.

As the actions authorized by all three resolutions have been performed, we are persuaded that the appeal should be dismissed as moot. Nonetheless, we choose to address the issues raised because they are of public importance and may recur. We conclude, based on the factual record developed, that (1) Little Flower was directly interested in all three resolutions, which together formed a package that authorized essential steps in achieving the land swap that the church sought; (2) the extent of Councilmember Kevin Hall's involvement in the church disqualified him from voting on the three resolutions; and (3) Councilmember Thomas Pirone's involvement was too minor to disqualify him.[1]

I.

"An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (quoting N.Y.

---

[1] Although membership on the Council has changed since the 2013 votes at issue in this appeal, for simplicity we refer to those involved by the positions they held at the relevant time.

A-4470-15T1

Susquehanna & W. Ry. Corp. v. State Dep't of Treasury, Div. of Taxation, 6 N.J. Tax 575, 582 (Tax Ct. 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985)). The architectural and planning services procured by Resolutions 61-2013 and 62-2013 have already been performed. The parties cannot practically or equitably be returned to the status quo that preceded the resolutions' adoption. See Baldasarre v. Butler, 254 N.J. Super. 502, 524 (App. Div. 1992) (quoting Ray v. Beneficial Fin. Co., 92 N.J. Super. 519, 539 (Ch. Div. 1966)) (stating that "when return to the status quo ante is a 'practical impossibility,' the equitable remedy of rescission is not available"), aff'd in part and rev'd in part on other grounds, 132 N.J. 278 (1993). In Statewide Hi-Way Safety, Inc. v. N.J. Department of Transportation, 283 N.J. Super. 223, 226 (App. Div. 1995), we dismissed as moot an appeal challenging the award of a highway construction contract, based on infirmities in the bidding process, because the project was "substantially completed." We reach the same conclusion regarding the professional services provided to the Township under Resolutions 61-2013 and 62-2013.

Resolution 59-2013 authorized the Township Planning Board, using the planners retained under Resolution 62-2013, to conduct a preliminary investigation whether to recommend that the area encompassing the current municipal complex is "in need of redevelopment" under N.J.S.A. 40A:12A-5.

However, voiding Resolution 59-2013 now would have no practical effect. After completing its preliminary investigation authorized by that Resolution, the Planning Board voted unanimously to recommend the Council designate the area in need of redevelopment. The Council adopted the recommendation and issued the designation. Those actions, which are not before us, effectively override any infirmity with the underlying resolution.[2] Furthermore, the record reflects that in the years following the passage of the three resolutions at issue, the Township changed course and decided to redevelop its municipal complex on its existing site.[3]

Nonetheless, while plaintiff's challenge to the three resolutions is moot, "our courts have exercised the discretion to decide an otherwise moot case that presents issues of significant public importance, or which stem from a controversy 'capable of repetition, yet evading review' because of the short

---

[2] The Township also asserted in its opposition brief that the Township adopted a separate resolution authorizing the investigation, which superseded Resolution 59-2013, and thereby rendered the dispute over it moot. However, the Township did not provide a copy of the separate resolution or otherwise identify it.

[3] Plaintiff contends that the Township now contemplates a sale of the Library site to help finance that redevelopment. The record includes a 2015 resolution authorizing the Planning Board to study whether the Township-owned Library site, church-owned Lot 19, and other properties were in need of redevelopment. No claim is before us that any members who voted for that resolution had a conflict of interest.

A-4470-15T1

duration of any single plaintiff's interest." Finkel v. Twp. Comm. of Twp. of Hopewell, 434 N.J. Super. 303, 315 (App. Div. 2013) (quoting In re Conroy, 190 N.J. Super. 453, 459 (App. Div. 1983), rev'd on other grounds, 98 N.J. 321 (1985)); see also Statewide Hi-Way Safety, 283 N.J. Super. at 226 (addressing issue on appeal despite mootness "because of its public importance").

We exercise that discretion here. Our courts have often noted that identification of a disqualifying conflict is fact sensitive, made on a case-by-case basis. See, e.g., Grabowsky v. Twp. of Montclair, 221 N.J. 536, 554 (2015). Thus, "[n]o definitive test can be devised." Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958). In particular, our Court has eschewed "a bright line rule under which the interest of a church or other organization is automatically imputed to all of its members." Grabowsky, 221 N.J. at 561.

Therefore, analysis of the specific facts in this case may provide useful illustrative guidance to public officials who must navigate the sometimes uncertain waters of conflict-of-interest rules. The issue presented in this case is likely to recur inasmuch as public-spirited citizens who are involved in their religious congregations will continue to seek ways to contribute to their communities by serving on town councils and other public bodies.

A-4470-15T1

II.

We begin with a review of Little Flower's interest in the resolutions. As we explained in our previous opinion, Little Flower sought to transfer its Lot 19 to the Township. The fifteen-acre parcel was burdened with costly and underutilized improvements, including a closed parochial school, and constrained by a deed restriction that prevented the church from freely selling the property. In exchange for Lot 19, Little Flower sought the Township's own Lot 26, a small parcel that included the local library, plus a cash payment of $2.8 million.

The land swap would enable the congregation to "rightsize" – in the words of its religious leader, Father Andrew Prachar – by downsizing to a physical plant that it could sustain financially. Father Prachar stated publicly that the land swap was essential to Little Flower's long-term survival. As for the Township, the land swap would provide a site for the relocation of the town hall and other municipal facilities. However, the Township's relocation of its municipal complex depended upon generating revenue from the redevelopment of its existing property.

## A.

Against this backdrop, we agree with the trial court's assessment that Resolution 61-2013, procuring architectural services, served the church's direct interest. The architects hired under Resolution 61-2013 were tasked with evaluating the suitability of Lot 19 for the Township's needs. That resolution expressly stated that the architectural services were needed "as a result of a potential land swap with Little Flower Church."

## B.

However, unlike the trial court, we are persuaded that Resolutions 59-2013 and 62-2013 also served the church's direct interest. The record reflects that the three resolutions were a package, adopted at the same February 19, 2013, council meeting. Each resolution addressed an essential aspect of the land swap that Little Flower sought. To accomplish the land swap, the Township had to evaluate not only the suitability of Lot 19 (as addressed in Resolution 61-2013) but also the Township's ability to redevelop its existing municipal property. That redevelopment was essential to the financial viability of the Township's relocation.

Thus, Resolutions 59-2013 and 62-2013 completed the land-swap package; the first authorized the preliminary investigation into whether to

A-4470-15T1

designate the municipality's current property as an area in need of redevelopment, and the second hired the planners to assist the Planning Board in deciding whether to recommend that designation. Resolution 59-2013 expressly acknowledged that commencing the process of designating the municipal land an area in need of redevelopment was "in connection with the Township of Berkeley Heights investigation of a potential land swap with the Little Flower Church for the relocation of the Township's municipal complex." In sum, Little Flower's interest in those two resolutions was as direct, and as significant, as its interest in Resolution 61-2013, which procured architectural services to assess Lot 19's suitability. The land swap the church sought could not proceed without them.

## C.

We next consider the question whether Little Flower's interests should be imputed to two of the Council members who voted for the resolutions – Council President Kevin Hall and Thomas Pirone.[4] It is well settled that even a single

---

[4] Plaintiff does not allege a conflict with respect to other voting members. As our previous remand was limited to voting members of the Council, we do not address plaintiff's arguments with respect to Council Vice-President Jeanne Kingsley, who declined to vote on the three resolutions, or Mayor Joseph G. Bruno, who was not entitled to vote under the circumstances. Furthermore, the Township does not dispute that Kingsley, who was a parish trustee and member of the church's finance council, had a conflict of interest.

conflicted member will render an action voidable. See Pyatt v. Dunellen, 9 N.J. 548, 557 (1952).

Although the Supreme Court in Grabowsky declined to adopt a "bright-line rule" automatically imputing a church's interest to its members, the Court recognized that "the interests of a church or similar organization in a particular community will ordinarily be imputed to its members who are public officials." 221 N.J. at 561 (emphasis added). In other words, the general rule is that members are conflicted. However, the Supreme Court left room for exceptions. As the Court stated, "[T]here may be circumstances in which automatic imputation of an organization's interests to its members may be unwarranted and unjust." Ibid.

The Court indicated that imputation "may be unwarranted and unjust" if the member is not actively involved in the church and is unaware of its legal positions. Ibid. "An individual's 'membership' in an organization does not necessarily denote active involvement in the group or awareness of the positions it takes in a legal dispute." Ibid. In deciding whether to impute a religious organization's interests to a particular member, it is also relevant to consider "the potential benefit to the organization." Id. at 561 n.6. "Such an imputed interest may not exist if . . . the potential benefit to the organization is too

attenuated." Ibid. By contrast, a substantial potential benefit should logically weigh in favor of imputation.

The Court had no need to explore the matter further because the case before it did not involve "public officials' status as ordinary members of their church," but rather two members who occupied leadership positions. Ibid.[5]

The burden of proof generally rests on the party challenging a municipal action. Id. at 551. A plaintiff meets this burden by showing a conflict of interest that is under ordinary circumstances, presumed imputed to a church's members. Grabowsky does not expressly state that a plaintiff's burden includes proving there are no exceptional circumstances that warrant departing from the rule that "ordinarily" calls for imputation. However, plaintiff was not obliged to prove that Hall and Pirone were leaders of their church. Rather, she had only to demonstrate that they were sufficiently active in their congregation and aware of its interest in the land swap that the church's interest could justly be imputed to them.

---

[5] We must also view with caution pre-Grabowsky cases that took a less nuanced view. For example, in light of Grabowsky's refusal to recognize a "bright-line rule," ibid., we must question the unqualified statement in Sugarman v. Twp. of Teaneck, 272 N.J. Super. 162, 169 (App. Div. 1994), that "[c]urrent membership in a synagogue or church would be a disqualifying interest."

Applying these principles, we are convinced that imputation was appropriate in Hall's case.[6] Hall was an active member of Little Flower: between 2011 and 2013, he attended mass as many as ten times a year and donated $800 to Little Flower. He was also well informed of the church's position. Significantly, weeks before a public discussion of the land swap at a Township Council meeting, Hall and Father Prachar exchanged several emails about the land swap, and the two men met privately, as well as with a Diocesan official, regarding the proposed transaction. Father Prachar shared with Hall an advance draft of his homily about the land swap, evidently seeking Hall's feedback. Furthermore, the potential benefit to the church was substantial. Father Prachar explained that the church was on the road to financial ruin without the land swap.

As the Supreme Court observed, "The potential of psychological influences cannot be ignored." Griggs v. Borough of Princeton, 33 N.J. 207, 220 (1960). Under the circumstances, Hall's "judgment may [have] be[en] affected because of membership in [the church] and a desire to help that

---

[6] We necessarily discuss the facts in the record detailing the members' personal history in attending religious services and in making donations to the church. We discuss these facts without, of course, suggesting whether the members' frequency of attendance or giving histories are indicative of the depth of their religious faith or adherence to church tenets. We respect the members' rights of religious freedom and by no means express or suggest any normative opinions about their involvement in the church.

organization further its policies." Wyzykowski v. Rizas, 132 N.J. 509, 525 (1993) (quoting Michael A. Pane, Conflict of Interest: Sometimes a Confusing Maze, Part II, New Jersey Municipalities, March 1980, at 8, 9).

That is not to say that Hall in fact compromised his duty to serve the public interest as a Council member. "The question is whether there is a potential for conflict, not whether the public servant succumbs to the temptation or is even aware of it." Griggs, 33 N.J. at 219. On that basis, we are convinced, under the facts presented, that Hall had a conflict of interest that disabled him from voting on the three resolutions.

On the other hand, we find no disabling conflict involving Thomas Pirone. A parishioner since 1998, Pirone's involvement in the church was limited. He and his wife attended mass less than twice a year, on average, between 2011 and 2013. His financial contributions to the church were modest, amounting to $255 during that three-year period. There is also no evidence that he was involved in private discussions with church officials about the land swap. He did not receive an advance copy of Father Prachar's homily. Plaintiff contends that Pirone should be deemed an active member of the church, nonetheless, because his children were confirmed in the church during the years preceding and following the adoption of the resolution. However, the record does not provide a basis to

conclude that the children's involvement was so significant that it should be imputed to their father. Therefore, we conclude that imputing the church's interest to Pirone would be unwarranted and unjust, as the evidence does not show he was actively involved in the church or privy to its positions.

The appeal is, nevertheless, dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                              A-4470-15T1