**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4674-18

ACADEMY HILL, INC.
and MERRICK WILSON,

     Plaintiffs-Appellants,

v.

CITY OF LAMBERTVILLE,
CITY COUNCIL[1] OF THE
CITY OF LAMBERTVILLE,
PLANNING BOARD OF THE
CITY OF LAMBERTVILLE,
and DAVID DELVECCHIO,
MAYOR OF THE CITY OF
LAMBERTVILLE,

     Defendants-Respondents.

_____

     Submitted September 21, 2020 – Decided April 20, 2021

     Before Judges Gooden Brown and DeAlmeida.

     On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0273-18.

---

[1] Improperly pled as Counsel.

Carter, Van Rensselaer and Caldwell, attorneys for appellants (William J. Caldwell, on the brief)

Sheak & Korzun, PC, attorneys for respondents (Timothy J. Korzun, Deborah I. Hollander, and Eugene Y. Song, on the brief).

PER CURIAM

Plaintiffs Academy Hill Inc. (Academy Hill), a commercial real estate developer, and Merrick Wilson, its owner and principal, appeal from the May 22, 2019 Law Division order granting summary judgment dismissal of their prerogative writ (PW) complaint against defendants City of Lambertville (City), City Council of Lambertville (City Council), Planning Board of the City of Lambertville (Planning Board), and David DelVecchio, in his official capacity as the former mayor of the City.

The parties have a history of contentious interactions and litigation spanning two decades pertaining to a tract of land plaintiffs owned in Lambertville. At every turn, plaintiffs sought to invalidate any action taken by defendants during that period that adversely affected their ability to develop the property on the ground that DelVecchio had a vitiating conflict of interest that disqualified him from serving on the Planning Board or as Mayor based on his employment with a real estate developer. However, the PW action at issue in this appeal specifically challenges the 2018 designation of plaintiffs' property

as an area in need of redevelopment (AINR). For the reasons that follow, we affirm.

I.

We recite the facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, "giv[ing] the benefit of all favorable inferences to plaintiffs." Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)). Academy Hill "and a prior affiliated corporation" acquired approximately twenty acres of land in Lambertville (the subject tract) "between . . . 1986 and 1992" to "develop[] . . . residential housing." Initially, the tract consisted entirely of undeveloped land, except for the Lambertville High School, a structure that had been in use since 1858. After the school "was vacated in 1959," the "building was used periodically for limited manufacturing . . . until 1992 when a fire caused significant damage." A period of disuse led to the building's ultimate demolition "in October 2012." However, "the demolition did not remove the former [h]igh [s]chool in its entirety" as "the former foundations remain[ed] on the property."

When Academy Hill first acquired the subject tract, the area was zoned "R-3 Planned Residential Development, which permitted numerous usages

including higher density housing." In 1998, Academy Hill "submitted a subdivision application" to the Planning Board "seeking approval" to build "[s]ixty-[s]ix . . . housing units" on the tract. While the application was pending, in consultation with the Planning Board, the City Council adopted Ordinance No. 98-18, which "eliminated the R-3 Planning Residential District, and significantly decreased the housing density permitted within the [s]ubject [t]ract."

In response, on December 3, 1998, Academy Hill filed an action in lieu of prerogative writ against defendants (the 1998 PW action), seeking to invalidate Ordinance No. 98-18. Other aggrieved parties also challenged the newly adopted zoning ordinance in a separate action. Following protracted litigation, the parties entered into a settlement agreement sometime in 2001 (the 2001 settlement agreement). The 2001 settlement agreement provided that the City would adopt an ordinance creating "a new zoning district, Residential Option 2 Overlay District, . . . exclusively" for the subject tract, "which included a minimum tract size of [t]wenty . . . acres, and a maximum density of 2.26 units per gross acre, . . . allow[ing] for [forty-six] housing units." Pursuant to the agreement, the new zoning district would "permit the development of the [subject tract] in a manner consistent with the City's land use objectives and

A-4674-18

policies and the intentions of . . . [p]laintiffs . . . for the development of the [tract,]" and would "provide [p]laintiffs . . . with a reasonable development opportunity for the [tract], so as to amicably resolve the zoning dispute between the [p]arties."

Notwithstanding the terms of the settlement agreement, in his certification opposing summary judgment, Wilson asserted that DelVecchio and his minions thwarted all of plaintiffs' efforts to develop the subject tract because of DelVecchio's employment with Joseph Jingoli & Sons (JJS), "a direct business competitor of [Academy Hill]." Wilson stated that DelVecchio "disguis[ed] his relationship" on his financial disclosure forms "by referring to his employer as 'JJS' instead of its legal name," and that "[a]n internet search of 'JJS' does not return a link to Joseph Jingoli & Sons, but rather mostly sandwich shops." According to Wilson, DelVecchio's employment with JJS created a "potential conflict of interest" that has "unreasonably impaired and precluded [plaintiffs'] development . . . of the [s]ubject [t]ract."

To support his assertion, Wilson recited a series of events beginning with an encounter with DelVecchio after the 2001 settlement agreement was reached during which DelVecchio "personally approached . . . Wilson . . . and threatened that he would do everything he could to see that . . . Academy Hill . . . would

5

never develop the . . . [s]ubject [t]ract." Disregarding the threat, Wilson "submitted a subdivision application for the . . . [s]ubject [t]ract in 2003." However, according to Wilson, before the application could be processed, DelVecchio "unreasonably" imposed a requirement that the former Lambertville High School "be renovated and retained in accordance with the City's 'historic buildings requirements'" despite the City's "[c]onstruction [o]fficer . . . declar[ing the building] an imminent hazard in need of demolition ten . . . years earlier."

Wilson certified that to avoid "additional protracted litigation," he decided "to forego building on the [s]ubject [t]ract . . . and instead . . . sell it subject to subdivision approval." However, those efforts were also stymied by DelVecchio "arguably in furtherance of his conflict of interest." To that end, Wilson asserted that in 2011, when he submitted various subdivision applications as required under contingent sales agreements to sell the subject tract to "nationally recognized" real estate developers, DelVecchio "unlawfully directed the [c]onstruction [o]fficial[] to issue summons/complaints [against Wilson] regarding the condition of the former . . . [h]igh [s]chool, solely in a further on-going effort to impede the subdivision application."

6

Additionally, according to Wilson, when the Planning Board, "of which DelVecchio [was] a statutory member, . . . reviewed the subdivision application for completeness," the application "was rejected on numerous [arbitrary] grounds," as "another potential manifestation of DelVecchio's conflict of interest." Specifically, Wilson disputed the Planning Board's determination that the application was "incomplete" because plaintiffs failed to "prove[] that the [s]ubject [t]ract [met] the [t]wenty . . . acre minimum tract requirement for [the] Residential Option 2 Overlay District" adopted by Ordinance No. 2001-15 pursuant to the 2001 settlement agreement.

In response, in May 2013, plaintiffs filed a motion in aid of litigants' rights under the 1998 PW action docket number, seeking to enforce the 2001 settlement agreement. On June 20, 2013, the trial court denied plaintiffs' motion, finding that "[n]one of the[] deficiencies" cited by the Planning Board "that rendered [plaintiffs' subdivision] application incomplete" "relate[d] to [d]efendants' requirements pursuant to the [2001 settlement a]greement." Instead, the court found that "[d]efendants ha[d] complied with the terms of the [settlement a]greement" because the settlement agreement "specifie[d] that the Planning Board [was] not required to approve [p]laintiffs' application, and that a denial w[ould] not be deemed a breach." Plaintiffs filed a notice of appeal

from the June 20, 2013 order, which was administratively dismissed for failure to prosecute.

On August 28, 2013, plaintiffs filed a complaint against defendants in the United States District Court for the District of New Jersey, alleging violations of federal and state laws based on the purported breach of the 2001 settlement agreement, and seeking to enforce the agreement as had been attempted unsuccessfully in state court (the 2013 federal action). On November 3, 2015, the 2013 federal action was "administratively terminated pending the parties' settlement discussions" and subject to "re-opening[] . . . if settlement discussions fail[ed]."

The order terminating the 2013 federal action was predicated on the parties' representations to the court that the City Council had "directed by resolution" that the "Planning Board conduct a preliminary investigation as to whether the area known as the '[f]ormer Lambertville High School,'" which "encompass[ed] the [subject tract]," was "in need of redevelopment based on the criteria set forth in [N.J.S.A. 40A:12A-1 to -49] (the 'Local Redevelopment and Housing Law' [LRHL])."[2] As a result of the ensuing preliminary investigation,

_____

[2] "Under the LRHL, a municipality is authorized to designate a 'redevelopment area,' also referred to as an '[AINR],' if the area meets certain conditions and certain procedures are followed." Borough of Glassboro v. Grossman, 457 N.J.

in October 2015, upon the Planning Board's recommendation, the City Council had "adopted two resolutions" designating "the [s]ite as 'an [AINR]'" and directing "that a Redevelopment Plan . . . be prepared for the [s]ite." Next, the parties anticipated "the creation of the Redevelopment Plan for the [s]ite," and ultimate adoption of an enabling "ordinance" by the governing body. There is no indication in the record that the 2013 federal action was ever reopened following its dismissal.

Notwithstanding the disposition of the 2013 federal action, Wilson asserted that DelVecchio "unlawfully prevent[ed Academy Hill] from proceeding in its subdivision [application]." According to Wilson, despite DelVecchio "knowing that the 2001 settlement agreement contemplated and required connection to the municipal sewer system," sometime in 2015, DelVecchio "caused the tract to be removed from Lambertville's Sewer Service Area" while "leaving every other adjoining property within the Sewer Service Area." "Plaintiff[s were] compelled . . . to contest the removal which took over two years and cost in excess of [$10,000] to remedy."

---

Super. 416, 423-24 (App. Div. 2019) (quoting N.J.S.A. 40A:12A-5 to -6). "Once an area is designated a 'redevelopment area,' a municipality must adopt a 'redevelopment plan' before going forward." Id. at 424 (quoting N.J.S.A. 40A:12A-7).

A-4674-18

Wilson continued that "[t]he most recent manifestation of DelVecchio's ongoing conflict of interest involve[d] the proposal by Lambertville for a Redevelopment Designation Area with the Power of Condemnation" encompassing the subject tract. To that end, on May 2, 2018, in Resolution No. 78-2018, the City Council ordered the Planning Board "to conduct a preliminary investigation" to determine whether parcels encompassing the subject tract (the study area)[3] were "an [AINR] according to the criterion set forth in N.J.S.A. 40A:12A-5" of the LRHL. When the resolution was read into the record at the May 2 public meeting, DelVecchio explained that the difference between this resolution and the one adopted in 2015 in connection with the 2013 federal action pertained to the inclusion of one lot and the omission of another.

Following the completion of a preliminary investigation that was memorialized in a twenty-seven-page report dated June 8, 2018, and after conducting a public hearing, the Planning Board recommended by resolution that the study area be designated an AINR with "the power of eminent domain

---

[3] The study area consisted of Block 1073, lots 1, 3, 5, 6, 7, 8, 9, 10, 11, 32, 33, and 33.01; Block 1090, lots 4 and 5; and Block 1091, lots 1 and 1.01. Plaintiffs owned Block 1073, lots 5, 6, 7, 8, 9, 11, 33 and 33.01; Block 1090, lots 4 and 5; and Block 1091, lots 1 and 1.01.

('Condemnation Redevelopment Area') . . . in accordance with the [LRHL]."[4] On June 19, 2018, during a regularly scheduled session, the City Council "accepted the Planning Board's recommendation" and the AINR designation was adopted by Resolution No. 100-2018.[5] Subsequently, the City Council adopted the redevelopment plan proposed by the Planning Board to effectuate the AINR designation in Ordinance No. 22-2018.

During the June 19 public session, DelVecchio informed the attendees that the redevelopment designation was required for the municipality to comply with its obligations under the Supreme Court's Mount Laurel decisions.[6] Previously,

---

[4] "[O]nce a redevelopment plan is adopted, the municipality is empowered, among other things, to . . . '[a]cquire, by condemnation, any land or building which is necessary for the redevelopment project, pursuant to . . . a Condemnation Redevelopment Area.'" Grossman, 457 N.J. Super. at 424 (quoting N.J.S.A. 40A:12A-8(c)).

[5] In his certification, Wilson stated that on February 22, 2017 and April 6, 2018, plaintiffs purchased three additional lots, totaling 6.43 acres, which lots were "included in Lambertville's 'Redevelopment District'" as of "June 16, 2018" and thereby "subject to condemnation." Because "[t]hese lots were never previously included in any designated [AINR]" and "[t]he designation only occurred after the lots were acquired," Wilson asserted that "such designation [was] a farce" that was "fatally inflected by DelVecchio's conflict of interest" and "intended only to unlawfully preclude [p]laintiffs from developing their properties for low/moderate income housing."

[6] In S. Burlington Cnty. NAACP v. Twp. of Mount Laurel (Mount Laurel I), 67 N.J. 151 (1975) and S. Burlington Cnty. NAACP v. Twp. of Mount Laurel (Mount Laurel II), 92 N.J. 158 (1983), the New Jersey Supreme Court

11

the City had filed a Mount Laurel declaratory judgment action in the Law Division and had reached a settlement with the Fair Share Housing Center (FSHC) that was pending a fairness hearing to "approve its plan for the provision of low- and moderate-income housing in the City."  In addition to memorializing the AINR designation area to meet the City's Mount Laurel obligations, Resolution No. 100-2018 provided that "notice of th[e] designation [would] be served upon[] each owner of property within the redevelopment area" so that "affected property owners shall have [forty-five] days . . . to challenge the redevelopment designation" or be "preclude[d] . . . [from] later raising such challenge."

On July 31, 2018, within the forty-five-day deadline, plaintiffs filed the PW action that is the subject of this appeal (the 2018 PW action), seeking a declaratory judgment and injunctive relief in connection with the City Council's AINR designation embodied in Resolution No. 100-2018.  Specifically, the PW complaint sought to (1) declare the FSHC settlement agreement and the 2018

determined that municipalities must provide a variety of housing choices, including low-and moderate-income housing.  In re Declaratory Judgment Actions Filed by Various Muns., 446 N.J. Super. 259, 268-69 (2016).  N.J.S.A. 52:27D-325 authorizes municipalities to "acquire . . . through the exercise of eminent domain, real property . . . which the municipal governing body determines necessary . . . for the construction . . . of low and moderate income housing . . . ."

AINR designation "null and void due to conflict of interest and failure to adhere to the standards of [the LRHL]," (2) "permanently restrain[] and enjoin[] DelVecchio from participating in or taking any official action in respect to any aspect of [p]laintiffs' interactions with the City . . . or the . . . Planning Board," (4) stay the fairness hearing for the FSHC settlement agreement then scheduled for September 2018 "pending the outcome" of the 2018 PW action, and (5) "compel[] DelVecchio to disgorge and return to the City . . . any and all compensation of any means whatsoever received due to conflict of interest."

In his supporting certification, Wilson stated that the City's redevelopment plan for the AINR "will not lead to a realistic opportunity for the provision of low[-] and moderate[-]income housing in Lambertville as Lambertville lack[ed] the financial ability to raise the funds necessary to pay for a condemnation let alone the subsequent costs of developing low and moderate income housing." Wilson further stated that DelVecchio "has and continues to financially benefit personally and professionally from [his] employment which provided incentives to him not available to the general public." Wilson asserted that "an average person[, when] presented with the facts set forth in [his] certification[, would] reasonably believe that DelVecchio's employment continuously created a conflict of interest[,] especially as DelVecchio . . . also received compensation

13

from the City . . . for the faithful execution of his duties as Mayor." Wilson urged that "[a]ny and all municipal action tainted by the conflict of interest of DelVecchio, in violation of N.J.S.A. 40A:9-22.5,[7] must be declared to be void ab initio." Defendants filed a contesting answer to the 2018 PW action on September 5, 2018.

The following day, September 6, 2018, plaintiffs filed an order to show cause (OTSC) to intervene in the City's Mount Laurel litigation that was awaiting a fairness hearing on the FSHC settlement agreement. In their OTSC, plaintiffs sought an order granting them intervenor status, adjourning the fairness hearing, and enforcing a Mount Laurel settlement agreement allegedly reached with the City in December 2017 that purportedly allowed plaintiffs to develop affordable and market-rate housing on the subject tract. Plaintiffs alleged that the City reneged on the December 2017 settlement agreement and subsequently adopted Resolution No. 100-2018, designating the subject tract an AINR subject to condemnation with the City presumably selecting a developer other than Academy Hill.

---

7  N.J.S.A. 40A:9-22.5 is a code of ethics adopted by the Legislature that "prohibits local government officers and employees from engaging in seven specific forms of conduct." Mondsini v. Local Fin. Bd., 458 N.J. Super. 290, 299 (App. Div. 2019).

A-4674-18

Plaintiffs' requests to be granted intervenor status and to adjourn the fairness hearing were denied.[8] The fairness hearing proceeded on September 13, 2018, with the court approving the FSHC settlement agreement as fair and reasonable on the ground that "the interests of [the region's] low[-] and moderate[-]income households will be advanced by its terms."[9] Subsequently, the court also denied plaintiffs' request "to enforce [the] alleged . . . settlement agreement" with the City, finding that although a mediation session was held between the parties on December 13, 2017,[10] there was "no writing . . . memorializing the alleged settlement," "no meeting of the minds," no "agreement . . . reached, tentative or otherwise," and no "ratifi[cation] by the [m]unicipality's [g]overning [b]ody."

---

[8] The trial court noted that plaintiffs' application to intervene was made well past the February 10, 2016 deadline for intervention in any Mount Laurel matter in the vicinage. However, the court "permitted [plaintiffs] to participate in the hearing as 'interested parties.'"

[9] The court's approval of the FSHC settlement agreement was contingent on the City's fulfillment of certain conditions. The court "retain[ed] jurisdiction . . . to ascertain and gauge the City's progress" in complying with the specified conditions.

[10] The court noted that the fact that additional mediation sessions were held on February 28 and April 19, 2018, further "belied" plaintiffs' claim that an agreement was reached on December 13, 2017.

A-4674-18

Five days after the fairness hearing, on September 18, 2018, Judge Michael F. O'Neill scheduled a case management conference (CMC) in the 2018 PW action for November 16, 2018, to discuss the scope of discovery and establish deadlines. However, prior to the CMC, on October 2, 2018, plaintiffs subpoenaed documents and noticed depositions for Joseph J. Jingoli, Jr. and Michael D. Jingoli, officers of JJS and DelVecchio's employer, contrary to Rule 4:69-4 providing that the scope of discovery in PW actions shall be determined by the court at the CMC. In response, over plaintiffs' objection, defendants moved to quash the subpoenas.

On December 18, 2018, Judge O'Neill granted defendants' motion to quash, "without prejudice to plaintiff[s'] right to seek discovery . . . at a later date." The judge found that plaintiffs did not comply with Rule 4:69-4, which also required them to certify that the official transcripts of all relevant proceedings had been ordered. Further, based on the judge's "review of the record and of proceedings in the related Mount Laurel litigation," the judge determined that "the scope of any discovery to be permitted . . . remain[ed] . . . uncertain" and "should be deferred to a later date."

Shortly thereafter, on December 31, 2018, DelVecchio's term as Mayor of Lambertville ended. DelVecchio continued his employment with JJS as

Director of Development.  However, other than owning his personal residence in Lambertville, neither DelVecchio nor JJS owns any property in Lambertville or have any agreements to develop property in Lambertville.

While the 2018 PW action was pending, on January 11, 2019, plaintiffs filed a nearly identical declaratory judgment complaint in the United States District Court for the District of New Jersey (the 2019 federal action), seeking, among other things, a declaration that Ordinance No. 22-2018 and "all actions in which DelVecchio participated" were "null and void" due to DelVecchio's "conflict of interest" in violation of N.J.S.A. 40A:9-22.5 and the City's failure to adhere to the standards of the LRHL.  Defendants filed a motion to dismiss "for lack of federal subject matter jurisdiction."  However, the record does not reveal the status of the 2019 federal action.

On April 12, 2019, defendants moved for summary judgment in the 2018 PW action.  Plaintiffs opposed defendants' motion and, on April 30, 2019, cross-moved for reconsideration of the December 18, 2018 order granting defendants' motion to quash plaintiffs' subpoena.  On May 22, 2019, Judge O'Neill denied plaintiffs' cross-motion and granted summary judgment in favor of defendants, dismissing plaintiffs' complaint with prejudice.

A-4674-18

In an oral decision, after recounting the extensive procedural history of the case, Judge O'Neill addressed threshold matters, including defendants' argument that res judicata barred most of plaintiffs' claims as well as plaintiffs' non-compliance with Rule 4:69-4's requirement to provide the record of all relevant proceedings. Judge O'Neill found that because several issues had been "litigated" or "abandoned," the "doctrine[] of res judicata appl[ied] to preclude many of the [allegations] . . . plaintiff[s] advance[d] in [the] complaint." See Innes v. Carrascosa, 391 N.J. Super. 453, 489 (App. Div. 2007) ("[Res judicata] provides that 'a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties . . . in a new proceeding.'" (quoting Velasquez v. Franz, 123 N.J. 498, 505 (1991))). Additionally, because "transcripts were not produced" in compliance with Rule 4:69-4, Judge O'Neill determined that dismissal of "plaintiff[s'] complaint on that basis alone" would be justified. See R. 4:69-4 (providing that "[t]he filing of [a PW] complaint shall be accompanied by a certification that all necessary transcripts of local agency proceedings in the cause have been ordered"). Nonetheless, the judge proceeded to address plaintiffs' claims substantively.

Turning to the merits, Judge O'Neill posited that "the issue [was] whether or not there [was] . . . any evidence that would lead a person of ordinary standing to perceive that . . . DelVecchio in his position [as Mayor had] . . . a conflict or a potential conflict [of interest]" to justify invalidating "all of the decisions that . . . DelVecchio was involved in." In that regard, the judge observed that under Kane Properties, LLC v. City of Hoboken, 214 N.J. 199 (2013), the appearance of impropriety standard was "[t]he applicable standard in determining the existence of a conflict of interest among municipal officials" such as DelVecchio. In Kane, the Supreme Court held "that 'it is not necessary to prove actual prejudice . . .' to establish an appearance of impropriety; an 'objectively reasonable' belief that the proceedings were unfair is sufficient." Id. at 222 (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)). However, an appearance of impropriety "must be 'something more than a fanciful possibility' and 'must have some reasonable basis.'" Ibid. (quoting Higgins v. Advisory Comm. on Prof. Ethics of Supreme Court, 73 N.J. 123, 129 (1977)).

Judge O'Neill also examined the four provisions of "the local . . . government ethics law [LGEL]" plaintiffs asserted DelVecchio violated to support their conflict-of-interest claim. Specifically, under N.J.S.A. 40A:9-22.5, local government officers shall comply with the following provisions:

19

a. No local government officer . . . shall have an interest in a business organization or engage in any business, transaction, or professional activity, which is in substantial conflict with the proper discharge of his duties in the public interest;

. . . .

c. No local government officer . . . shall use or attempt to use his official position to secure unwarranted privileges or advantages for himself or others;

d. No local government officer . . . shall act in his official capacity in any matter where he . . . or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment;

e. No local government officer . . . shall undertake any employment or service, whether compensated or not, which might reasonably be expected to prejudice his independence of judgment in the exercise of his official duties[.]

[N.J.S.A. 40A:9-22.5(a), (c), (d), (e).]

In rejecting plaintiffs' contention that DelVecchio violated subsection (a), the judge found "no evidence that . . . DelVecchio ha[d] an interest in an organization . . . which [was] in . . . substantial conflict" with the proper discharge of his official duties. Moreover, the judge stated it was "speculative, at best, to suggest that JJS may be engaged in something that would give rise to

20

an allegation of a substantial conflict in the future."  Regarding subsection (c),

Judge O'Neill found

> no evidence . . . that . . . DelVecchio was in a position to use his position to secure [unwarranted] privileges or advantages for himself or others.  He doesn't have any ownership interest in JJS.  And . . . there are a lot of things that have got to happen before . . . there would even be the possibility that JJS would be the beneficiary of some of these decisions that were made by the governing bod[y] in Lambertville.[11]

Turning to subsections (d) and (e), the judge noted that both subsections "use the present tense . . . in talking about an organization in which he has an interest or has a direct or indirect financial or personal involvement" which might reasonably be expected to impair his objectivity or independence of judgment.  However, "there [was] no evidence of a violation of [those subsections] by . . . DelVecchio, or even a hint of it."  Judge O'Neill acknowledged plaintiffs' concessions that DelVecchio was "no longer in office" and JJS "ha[d] no present financial interest in either the land, which was the subject of the AINR designation, nor in any contracts actually to be awarded." The judge also observed that because "[t]he eminent domain process cannot

---

[11]  In that regard, as suggested by defendants, the judge pointed out that "this designation of the [AINR] and the subsequent adoption of the redevelopment plan [were] just two small steps . . . in a multi-step process that could take years to complete," long past DelVecchio's tenure as Mayor.

begin until after the formal redevelopment plan is adopted and approved, and . . . there [were] other prerequisites that . . . ha[d] yet to occur[,]" there was "nothing in this process which occurred while [DelVecchio] was mayor and on the Planning Board [that] could even remotely benefit the ex-mayor or his employer, JJS."

For the same reasons, the judge determined there was no evidence of a violation of the Municipal Land Use Law's prohibition against planning board members like DelVecchio "act[ing] in any matter in which he has, either directly or indirectly, any personal or financial interest." See N.J.S.A. 40:55D-69. The judge noted "[i]t [was] not disputed that [DelVecchio] would have had to recuse himself from any resolution awarding a contract to [JJS], but that [did] not mean that [DelVecchio] had to recuse himself from any land use ordinance simply because he worked for a construction company." [12]

After analyzing the governing principles, Judge O'Neill concluded:

> I . . . don't find that there [are] any competent facts in the record, nor do I think there is likely to be any developed through deposition discovery, that's going to suggest that . . . a reasonable person . . . would likely find that . . . DelVecchio, performing these activities while . . . he was the Mayor [and] on the Planning Board somehow was in a conflict or a potential conflict

_____

[12] Defendants pointed out without contradiction "that there have been no formal ethics charges that have ever been filed against . . . DelVecchio."

situation. . . . [T]here [are] no facts . . . to support it. There is no evidence to suggest that [JJS] had . . . [or] is ever going to have a say in the redevelopment. It's . . . just too many dots to be connected. And it's too remote, it's too speculative.

And . . . it would be a pure fishing expedition to permit . . . plaintiff[s] to engage in discovery in an attempt to develop something that has been suspected . . . for years, and even alleged to be the case for years, and yet . . . there [are] no real facts to support it at the moment.

And . . . so many things have got to take place before [JJS] would ever be the potential beneficiary of these actions that . . . I just can't find that it would be appropriate to allow . . . plaintiff[s] to engage in what I would have to describe as a fishing expedition in an effort to develop some facts that might support a later claim.

. . . .

[A]t the time [DelVecchio] made these decisions and participated in these decisions he wasn't in a situation where he had contradictory desires tugging at him. It might be . . . years before there is even going to be a redevelopment of this property. And there is no reason to assume that [JJS] is going to be the [company that] is going to end up being the redeveloper.

The judge also rejected plaintiffs' reliance on DelVecchio's use of the JJS "abbreviation" on "his annual financial disclosure form," as well as the fact that JJS "is in the same business" as plaintiffs to support his allegations that a potential conflict-of-interest existed. The judge explained that "[e]ven . . .

23

accept[ing] both of those allegations as true, . . . [as] required . . . on a motion for summary judgment, . . . they don't give rise to a material disputed issue of fact that would create a fact issue or call for there to be discovery . . . on these allegations of potential conflict of interest" because it is "far too speculative." The judge entered memorializing orders and this appeal followed.[13]

On appeal, plaintiffs raise the following two points for our consideration:

> POINT I
>
> THE QUASHING OF PLAINTIFF[S'] DEPOSITION SUBPOENAS PRECLUDED PLAINTIFF[S] FROM INVESTIGATING FURTHER DETAILS REGARDING DEFENDANT DELVECCHIO'S CONFLICT OF INTEREST.
>
> POINT II
>
> THE COURT BELOW ERRED BY FAILING TO CONSTRUE THE FACTS MOST FAVORABLY TO THE PLAINTIFF[S] WHICH SHOULD HAVE PRECLUDED THE COURT BELOW FROM GRANTING SUMMARY JUDGMENT.

II.

We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

---

[13] On December 30, 2019, we denied plaintiffs' motion to supplement the record.

[I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.

[Ibid. (citations omitted) (quoting R. 4:46-2(c)).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Turning to the substantive principles of law pertinent to this appeal, "because of their peculiar knowledge of local conditions," "the law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons" in making determinations in these types of cases. Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965). Accordingly, "[r]edevelopment designations, like all municipal actions, are vested with a presumption of validity" and "the burden is on the objector to

overcome the presumption of validity by demonstrating that the redevelopment designation is not supported by substantial evidence, but rather is the result of arbitrary or capricious conduct on the part of the municipal authorities." Concerned Citizens of Princeton, Inc. v. Mayor & Council of Borough of Princeton, 370 N.J. Super. 429, 452-53 (App. Div. 2004). "Absent such a demonstration on the part of the objector, sufficient to raise a material factual dispute, summary judgment must be granted in favor of defendants." Id. at 453.

So long as the redevelopment designation pursuant to the LRHL "falls within the broad terms of the definition laid down by the Legislature, the courts will not interfere in the absence of palpable abuse of discretion or bad faith." Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 539 (1971). Under the LRHL, "[a] delineated area may be determined to be in need of redevelopment if, after investigation, notice and hearing . . . , the governing body of the municipality by resolution concludes that within the delineated area any of [eight enumerated] conditions is found[. . . .]" N.J.S.A. 40A:12A-5.

Here, the City Council's adoption of Ordinance No. 22-2018, effectuating the AINR designation, was informed by the Planning Board's preliminary investigation and comprehensive June 8, 2018 report, as well as public hearings culminating in the determination that the study area encompassing the subject

tract met the criteria in N.J.S.A. 40A:12A-5. Specifically, the report concluded that the study area satisfied the criteria in N.J.S.A. 40A:12A-5(a) to (f)[14] "due to persistent site conditions that exhibit[ed] obsolescence and dilapidation that [were] detrimental to the public's safety and welfare."

Despite characterizing the study's findings as "bogus" and "false," plaintiffs assert that "[t]he issue is not the myriad of . . . paperwork generated as the result of Lambertville's pursuit of designating [p]laintiff[s'] properties as an [AINR] with the power of condemnation," but that the "studies, proposals and adopted actions have been irrevocably tainted by DelVecchio's potential conflict of interest." We disagree and affirm for the reasons articulated in Judge O'Neill's well-reasoned oral decision granting summary judgment to defendants on the ground that plaintiffs failed to provide any competent proof of a potential conflict of interest on the part of DelVecchio.[15] We add the following comments for elucidation.

---

[14] Generally, subsections (a) to (f) permit a municipality to find that the physical condition of the properties at issue has reached a level of deterioration, disuse, and disrepair that is detrimental to public health, safety and welfare, threatens to degrade surrounding areas or the community in general, and is unlikely to be remedied by private investment. N.J.S.A. 40A:12A-5(a) to (f).

[15] We also agree with the judge that plaintiffs' failure to adhere to Rule 4:69-4, requiring PW complaints to "be accompanied by a certification that all necessary transcripts of local agency proceedings in the cause have been ordered,"

A-4674-18

Common law principles dictate that "[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body." Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551-52 (2015) (alteration in original) (quoting Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993)). A challenge to a public official acting in his official capacity "on conflict-of-interest grounds [also] implicates the provisions of two statutes that codified [these] common law principles," the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163 (MLUL), that provides, among other things, "that no member of a municipal planning board may 'act on any matter in which he has, either directly or indirectly, any personal or financial interest,'" and the LGEL, N.J.S.A. 40A:9-22.1 to -22.25, which created a statutory code of ethics for local government officials. Id. at 552-53 (quoting N.J.S.A. 40:55D-23(b)); see also Mondsini, 458 N.J. Super. at 299 ("This code of ethics prohibits local government officers . . . from engaging in seven specific forms of conduct." (citing N.J.S.A. 40A:9-22.5(a) and -22.5 (c) to (h))).

---

constituted a proper basis to dismiss the complaint on procedural grounds. Plaintiffs neither provided the requisite certification nor included a copy of the Planning Board's report embodying the preliminary investigation in the exhibits.

"A court's determination 'whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case.'" Grabowsky, 221 N.J. at 554 (quoting Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958)). Indeed, in Grabowsky, our Supreme Court explained

> [i]t is essential that municipal offices be filled by individuals who are thoroughly familiar with local communities and concerns. It is also imperative that local officials comply with the Legislature's direction and refrain from participating in a determination that raises a conflict. Thus, the nature of an official's interest must be carefully evaluated based on the circumstances of the specific case.
>
> [221 N.J. at 554 (citing Van Itallie, 28 N.J. at 268).]

"To determine whether there is a disqualifying interest, a court need not ascertain whether a public official has acted dishonestly or has sought to further a personal or financial interest; the decisive factor is 'whether there is a potential for conflict.'" Ibid. (quoting Wyzykowski, 132 N.J. at 524). However, "[t]he ethics rules must be applied with caution, as '[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official." Ibid. (quoting Wyzykowski, 132 N.J. at 523). Thus, "[t]he question will always be whether the circumstances could reasonably be interpreted to show that they had the

likely capacity to tempt the official to depart from his sworn public duty." Van Itallie, 28 N.J. at 268. However, not every personal interest has that capacity because "[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions." Wyzykowski, 132 N.J. at 524 (alteration in original) (quoting LaRue v. Twp of E. Brunswick, 68 N.J. Super. 435, 448 (App. Div. 1961)).

In Kane, the Court further clarified the manner in which a conflict-of-interest claim should be evaluated in relation "to municipal officials acting in a quasi-judicial capacity," as here. 214 N.J. at 220. The Court "made clear that 'it is not necessary to prove actual prejudice . . . .'" Id. at 222. Instead, all that is required is "an appearance of impropriety" and "an 'objectively reasonable' belief that the proceedings were unfair is sufficient" to invalidate the municipal action. Ibid. (quoting DeNike, 196 N.J. at 517). However, because "the touchstone is the objectively reasonable belief, . . . it remains true that an appearance of impropriety must be 'something more than a fanciful possibility' and 'must have some reasonable basis[. . . .]'" Ibid. (quoting Higgins, 73 N.J. at 129).

Applying these standards, we agree with Judge O'Neill that "an objectively reasonable, fully informed member of the public" would not

30

perceive that DelVecchio's participation called into question the integrity of the proceedings. Id. at 223. On the contrary, plaintiffs' claim that DelVecchio's mere employment with JJS disqualified him from every action he took as Mayor and member of the Planning Board in relation to the AINR designation is speculative and nothing "more than a fanciful possibility" with no "reasonable basis." Id. at 222 (quoting Higgins, 73 N.J. at 129). Indeed,

> [l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official. If this were so, it would discourage capable men and women from holding public office. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. But in doing so they must also be mindful that to abrogate a municipal action at the suggestion that some remote and nebulous interest is present, would be to unjustifiably deprive a municipality in many important instances of the services of its duly elected or appointed officials.
>
> [Van Itallie, 28 N.J. at 269.]

Further, plaintiffs' attempt to invalidate every action taken by DelVecchio for two decades that adversely affected the subject tract is time-barred by the forty-five-day time limit for PW actions prescribed in Rule 4:69-6(a). Moreover, the interest of justice does not warrant an enlargement of time. See R. 4:69-6(c); see also Casser v. Twp. of Knowlton, 441 N.J. Super. 353, 367

31

(App. Div. 2015) ("Allowing [a plaintiff to challenge land use approvals three years later] . . . would defeat 'the important policy of repose expressed in the forty-five day' time limit set by Rule 4:69-6(a)." (quoting Rocky Hill Citizens for Responsible Growth v. Planning Bd. of Rocky Hill, 406 N.J. Super. 384, 398 (App. Div. 2009))); Tri-State Ship Repair & Dry Dock Co. v. City of Perth Amboy, 349 N.J. Super. 418, 423 (App. Div. 2002) ("Because of the importance of stability and finality to public actions, courts do not routinely grant an enlargement of time to file an action in lieu of prerogative writs.").

Equally unavailing is plaintiffs' contention that by granting summary judgment in favor of defendants, Judge O'Neill "ignored the twenty[-]year history of the interactions between [p]laintiff[s] and the City . . . which provided context to [p]laintiff[s'] claim of conflict of interest." On the contrary, the judge acknowledged the "long litany of prior failed litigation between . . . plaintiff[s] and the City and its officers" going "all the way back to . . . 1998," but determined that "this presumed conflict [was] based on plaintiff[s'] speculative beliefs" and "suspicion that [DelVecchio] was engaged in . . . this untoward behavior in an effort to . . . deny [plaintiffs] the opportunity to develop" the subject tract. According to the judge, plaintiffs' allegations "don't have any . . . factual substance to them."

Essentially, plaintiffs argue that their allegations alone are sufficient to defeat summary judgment, but they are not. "To defeat a motion for summary judgment, the opponent must 'come forward with evidence' that creates a genuine issue of material fact." Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "Bare conclusory assertions, without factual support in the record, will not defeat a meritorious application for summary judgment." Horizon Blue Cross Blue Shield, 425 N.J. Super. at 32 (citing Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999)); accord Puder v. Buechel, 183 N.J. 428, 440-41 (2005) ("[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the [summary judgment] motion."); Oakley v. Wianecki, 345 N.J. Super. 194, 201 (App. Div. 2001) ("unsubstantiated inferences and feelings" are insufficient to defeat a motion for summary judgment).

Turning to the denial of plaintiffs' cross-motion for reconsideration, plaintiffs contend that the trial court "did not consider the relevant legal standard when considering the motion to quash" and argue that "[w]ithout the ability to search for the truth through depositions [p]laintiff[s] [were] improperly denied

the ability to establish additional facts in support" of their conflict-of-interest allegations. We disagree.

Rule 4:49-2 provides that "a motion for . . . reconsideration seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of the judgment or order upon all parties by the party obtaining it." Reconsideration is not appropriate when a party is merely "dissatisfied with [the court's] decision," or "wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Reconsideration is only appropriate when "the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis," or "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

"[T]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). As a result, "a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion[,]" which only occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies,

A-4674-18

or rested on an impermissible basis.'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, preliminarily, we agree with defendants that plaintiffs' motion was filed "late" and showed "[n]o good cause" for the untimely filing. Plaintiffs did not file their cross-motion for reconsideration until April 30, 2019. Because the order granting defendants' motion to quash the subpoenas was entered on December 18, 2018, plaintiffs' reconsideration motion was filed approximately three months after the twenty-day filing deadline.

In any event, we discern no abuse of discretion in the denial of the motion. Once Judge O'Neill granted defendants' summary judgment motion, he denied plaintiffs' reconsideration motion "by necessity" as the disposition of the summary judgment motion and attendant dismissal of plaintiffs' PW complaint with prejudice rendered plaintiffs' reconsideration motion moot. "While we agree that ordinarily summary judgment dismissing the complaint should not be granted until the plaintiff has had a reasonable opportunity for discovery, . . . plaintiff has an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements . . . ." Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1977).

A-4674-18

Here, plaintiffs failed to specify the nature of the information they still hoped to elicit and failed to elicit over two decades. Moreover, Judge O'Neill's reasoning that permitting plaintiffs to engage in discovery after years of unfounded suspicions would constitute an improper "fishing expedition" was a rational basis for denying the motion.

To the extent any argument raised by plaintiffs has not been explicitly addressed in this opinion, it is because the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION